Bacon v. Kentucky Central Railway Company.

---

CASE 66—PETITION EQUITY—MARCH 13.

## Bacon v. Kentucky Central Railway Co.

95    373
106   458

95    373
125   591

95    373
130   481

APPEAL FROM BOURBON CIRCUIT COURT.

OPTIONS—CONSIDERATION.—An optional agreement to convey, although without any covenant or obligation to purchase and without any mutuality of remedy, will be enforced in equity if it is made upon proper consideration or forms part of a lease or other contract between the parties that may be the true consideration for it.

Where it was stipulated in a lease of land to a railroad company that at the expiration of the lease the company should have the right to purchase the land at a certain price, the agreement was binding on the lessor, although there was no obligation upon the part of the lessee to purchase, the other undertakings of the lessee being a sufficient consideration.

WARD & DICKSON FOR APPELLANT.

1. The want of mutuality in the contract is fatal to its enforcement. (Litz v. Goosling, 14 Ky. Law Rep., 91; Boucher v. Vanbuskirk, 2 A. K. Mar., 345; Barbour v. Pate, 2 Mon., 8; Jones v. Noble, &c., 3 Bush,

697; File v. Orr, &c., 8 Ky. Law Rep., 349; Allen v. Roberts, 2 Bibb,
98; Smith v. Cansler, 83 Ky., 368.)
  Cases commented on: Page v. Hughes, 2 B. M., 439; Bank of Louis-
ville v. Baumeister, 87 Ky., 6.
2. The contract was not assignable,
3. The defendant did not comply with the conditions to be performed by it,
and hence is not entitled to a specific execution. (Spalding v. Alex-
ander, &c., 6 Bush, 167; Story's Equity, secs. 775, 742.)
4. The contract is one not capable of specific enforcement. (Blanchard v.
D., L. & L. M. R. Co., 18 Am. Rep., 149.)

GEO. C. LOCKHART FOR APPELLEE.

The option to purchase the leased premises at the expiration of the lease is
based upon a sufficient consideration and is enforceable. (Baumeister
v. Bank of Louisville, 87 Ky., 12; Hawralty v. Warren, 3 C. E. Green,
124; s. c., 90 Am. Dec., 613; In re Hunter, 1 Edw., ch. 1; Welch v.
Whelpley, 62 Mich., 15; s. c., 4 Am. St. Rep., 810; Davis v. Robert,
89 Ala., 402; s. c., 18 Am. St. Rep., 126; Suffrain v. McDonald, 27
Ind., 269; Waterman on Specific Performance, pp. 267, 268 and 269;
Maughlin v. Perry, 35 Md., 352; Perkins v. Hasdell, 50 Ill., 216;
Hare & Wallace's Leading Cases in Equity, 4 Am. ed., vol. 2, p. 1090;
Boucher v. Vanbuskirk, 2 A. K. Mar., 345; Litz, &c., v. Goosling, 14
Ky. Law Rep., 91.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

On the 17th of March, 1855, W. A. Bacon, the appel-
lant, leased to the Covington & Lexington Railroad Com-
pany three acres of ground near Paris, Ky., for the term
of ten years. The lessee agreed to fence off the ground
into lots, keep it fenced, and only use the premises for
cattle lots. Also to pass on its cars the lessor, while on
his own business, and his wife and children, during the
continuance of the lease. It further agreed that Bacon
might put a pair of stock scales on the ground and use
them, and would charge no freight for the transportation
of the scales on its road, or of lumber to build an office
or house for stockmen, and whatever sawdust was trans-
ported by the lessor for the shipment of stock from Paris
was to be charged half freight.

This agreement was signed by both parties and put to record in the clerk's office of the Bourbon County Court. The lessee took possession of the ground and complied with the terms of the contract. On August 6, 1862, the lease was extended so as to run for twenty-five years from the expiration of the first lease, or until March 17, 1890, and was altered in boundary to some slight extent. It was also again stipulated that the lessee, then the Kentucky Central Railroad Company, should keep the ground fenced and use it for stock lots, and give Bacon a pass for himself and family on the railroad when traveling on his own business. There was, however, added to the lease the following clause, and out of it grows the present controversy:

"At the expiration of the lease, or upon the sale of said property by said Bacon, or in case of his death, the said company, by their authorized agent, shall have the right to purchase the said land now leased for the sum of one hundred dollars per acre, payment to be in cash at the time the deed is made and the land taken by said company. If after purchase the company shall decide to discontinue using said lots for stock purposes, the said Bacon, or his heirs, shall have the refusal to repurchase the same at the same price per acre for the land, and to pay for all improvements that may be put on said land, including the fencing, provided they agree to do so within ninety days after the same shall be offered to them."

This "extended" lease was also signed by both parties and put to record. Without disagreement of any substantial character, the parties continued under the contract—the lessor to obtain and use the passes, the half rates on sawdust, of which he was using large quantities

in the monopoly he had secured of "bedding" the cars of all stock shipped from Paris, etc., and the lessee to use the lot only for cattle lots, keeping the same fenced, etc., until on the 17th of March, 1890, and again on the 18th, the Kentucky Central Railway Company, as the successor of the Kentucky Central Railroad Company, tendered to Bacon the sum of three hundred dollars in payment for the ground embraced in the lease, and demanded a conveyance thereof under the terms of the contract. The latter refused to convey, and shortly filed his petition seeking to recover possession of the land and damages for its detention and use since the termination of the lease. The company defended its holding by virtue of the contract, alleged compliance with all its terms, which was denied by Bacon, and sought to compel a conveyance. The chancellor decreed specific performance and Bacon appeals. He contends that the contract is not enforceable because the lessee was not obliged, at the expiration of the lease, to perform the contract of purchase. The lessor, by tendering a deed to the company, could not have obliged it to pay the stipulated price of three hundred dollars.

To put the contention in another form, the contract, in so far as and inasmuch as it secures to the company a mere option to purchase the ground, is void for want of mutuality of obligation. It is argued that as both are not bound neither is bound. This doctrine, it is insisted, is borne out by the case of Boucher v. Vanbuskirk, 2 A. K. Mar., 345, decided by this court in 1820, and followed in Barbour v. Pate, 2 T. B. Mon., 8; Jones v. Noble, &c., 3 Bush, 697, and finally in a pronounced and conclusive form in Litz v. Goosling, &c., 93 Ky., 185.

On the other hand it is insisted that what is termed by the counsel of appellee as the more modern doctrine, that an optional agreement to convey without any corresponding agreement to purchase and without any mutuality of remedy, is enforceable in equity, if made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true consideration for it, is authoritatively settled in the case of Bank of Louisville v. Baumeister, &c., 87 Ky., 12, and clearly put in the case of Hawralty v. Warren, 18 N. J. Eq., 124 (s. c., 90 Am. Dec., 613), and in numerous other cases cited. A careful examination of these cases will, we think, fail to disclose any conflict between them. In the cases relied on by the appellant, the court finding in emphatic form a lack of mutuality of obligation and remedy, and no consideration whatever otherwise appearing, held this feature to be fatal to the enforcement of so "one sided" a contract. As we shall see, there must always be mutuality of contract, but the obligation to convey need not always be accompanied by an obligation to purchase—other consideration may make the contract mutually binding. In the Boucher-Vanbuskirk case *supra*, Vanbuskirk let to Boucher fifty acres of land adjoining other lands of the latter, upon which he might raise a house if he so desired, and might clear the land "without let or molestation, and enjoy the privileges of the same," and thereunto they set their hands and seals "the 9th of July, 1811," and then followed the agreement that if Boucher should pay to Vanbuskirk two dollars and fifty cents per acre the latter obligated himself to make the former a deed in fee for as much as he should pay, etc. The court announced the doctrine that "it is well settled that to enable either party

to compel a specific execution the contract must be mutually binding on each," and said that there was nothing to distinguish the case from "the naked case of an agreement binding on one party." The improvements mentioned, if any were put on the land by Boucher, and it was said that there was nothing in the record to show that any were erected, were made voluntarily. He was not bound to erect any, and it is noticeable that Boucher bound himself by the contract in no particular whatever, nor was there any consideration for the lease which could form the basis for the option to purchase. So in the cases of Barbour v. Pate and Jones v. Noble, &c., *supra*, there is nothing in either of the contracts, the enforcement of which was denied, distinguishing them from the "naked case of an agreement binding only on one side," and there was no consideration to uphold the contract for an option. In Litz v. Goosling, *supra*, Goosling and wife agreed "in consideration of one dollar to sell and convey unto E. H. Sudduth . . . with general warranty of title . . . all the coal in, upon and underlying a certain tract or parcel of land," etc. The court refused to enforce the contract because of a lack of mutuality of obligation, but said: "If the contract for an option to purchase real estate at a certain price within a certain time be based upon a sufficient consideration, which may consist, of course, either in an advantage moving to the one party or a disadvantage to the other, then it is enforceable; but where a mere naked option, destitute of consideration, is given to one, it is not enforceable, because there is no mutuality of right and remedy."

Turning from these cases where there was confessedly no sort of consideration to uphold the contracts, we notice

Bacon v. Kentucky Central Railway Company.

first the case of Bank of Louisville v. Baumeister, &c., *supra*. This court said : " It is true, as argued, ' a contract must be mutual, and one party can not be bound without, the other.' But that does not mean that any one or more acts to be done by one of the parties must necessarily be simultaneous with the consideration paid or agreed to be paid by the other. The conveyance of the lot upon demand and tender of the agreed price by Spalding was obligatory upon Mrs. Bullitt, if at all, because it was part of the contract of lease, which being founded upon a valuable consideration, was valid and enforceable as an entirety. . . . We perceive no reason why the owner of unproductive real estate may not, as part of a contract of lease, and in consideration of rent to be paid by his lessee, or expense to be incurred in making it productive, as seems to be this case, bind himself to sell it within a prescribed period, at a stipulated price, at the option of the lessee." The same principle is determined in Page v. Hughes, 2 B. M., 439. In Hawralty v. Warren, *supra*, it is said : " These unilateral or optional contracts are not favored in equity, and it has been held both in Great, Britain and this country, that want of mutuality of obligation and remedy is a bar to specific performance. (Lawrence v. Butler, 1 Schoales and L., 13; Parkhurst v. Van Cortlandt, 1 Johns. Ch., 282 (7 Am. Dec., 427), etc.) But modern authorities have narrowed this doctrine down to cases in which there is no other consideration. And it is now well settled that an optional agreement to convey or renew a lease without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity, if it is made upon proper con-

sideration, or forms part of a lease or other contract between the parties that may be the true consideration for it. (Hatton v. Gray, 2 Ch. Cas., 164; Backhouse v. Crosby, 2 Eq. Cas. Abr., 32, par. 44; Backhouse v. Mohun, 3 John. R. [Swanst.], 434. . . .) In this case the agreement was executed at the same time with the lease, and was part of the same transaction, and must for this purpose be treated as if part of the lease."

In re Hunter, 1 Edw. Ch., 1, the court said: "In the next place, it is said the covenant to sell is not mutual, the lessee not being bound to purchase, and that as this is a 'one sided' agreement, the court will not decree a specific performance." But after discussing the authorities the learned vice-chancellor concluded thus: "The court may, therefore, in a proper case, where there is a covenant on one side and no mutuality, decree a performance. Besides, in a case like the present, it may be peculiarly proper. The rent may have been fixed at five hundred dollars as an inducement to the power of purchasing the property. This is a fair inference." To the same effect are the cases of Davis v. Robert, 89 Ala., 402 (s. c., 18 Am. St. Rep., 126); Hall v. Center, 40 Cal., 63, and Souffrain v. McDonald, 27 Ind., 269. In the last-named case the court said: "Numerous authorities are cited upon the point that a mere offer to sell may be withdrawn at any time before it is accepted. That such is the law can not be controverted. But the agreement under consideration is not a mere naked proposition to sell the lot, nor can it be regarded as separate and distinct from the lease of the lot and the consideration stated in the agreement. The stipulations on the one side to lease the lot for a period of

two years, with the right of the lessees within that time
to purchase the same at the price and on the terms stated
in the agreement, and on the other to pay the rent
agreed upon, and to erect the fence, must be regarded as
constituting one entire agreement, each particular stipu-
lation forming an inducement thereto.   The agreement
to pay the rent and build the fence must be deemed to
have been made in consideration as well for the privilege
of becoming the purchasers of the lot as for its use."

Mr. Waterman in his work on Specific Performance of
Contracts (page 269) lays down the same rule.   "The
mutuality and consideration," says that author, "consist
in the fact that the vendee has done, upon the promise of
the vendor, what the latter required, and it is immaterial
that it was done without entering into a previous under-
taking to do it."

In the case under consideration, the company, for the
use of three acres of unimproved ground, and the right
to buy it at the end of the lease for three hundred dollars,
agreed to pay or furnish to the appellant free travel on
its cars for himself and family, haul the sawdust needed
by him in bedding the cars for stock at half price, fence
off the ground into subdivisions for cattle lots, and keep
the same fenced, and, what was by no means an unim-
portant feature of the contract, retain and use the premises
for stock lots.   We say this latter was no unimportant part
of the consideration, because we gather from the contract
referring to the appellant's use of sawdust, and which is
made clear from the proof, that the chief point in view
with Bacon was to have the company use his grounds as
its stock lots, and thus secure the right to "bed" the cars,

the average yearly profit from which business, continued throughout the whole of the lease, was from six hundred to eight hundred dollars. We can not say that the consideration furnished by the lessee was solely for the use of the ground. We must conclude that each and every stipulation on the part of one of the contracting parties is supported by and induced by each and every stipulation on the part of the other. We may read the contract as if by it the lessee agreed to perform the stipulations required of him provided, or on condition, that he thus secured by purchase, for a valuable consideration, the right or option to buy, and when the contract is so considered, we find no authority in this State or elsewhere which induces us to sacrifice the equity of enforcing the agreement to the somewhat ambiguous, though euphonistic, doctrine of "mutuality and reciprocity of obligation."

On the issues of fact presented, we think the lessee furnished and the lesssor received in every substantial particular the services undertaken to be furnished under the contract. The benefits accepted by the lessor under the agreement were received throughout a period of some thirty-five years, and he will not now be heard to say "my passes were in an unsatisfactory form; I paid full freight for my sawdust, and was put to the slight inconvenience of waiting a few days for the rebate; I got passes only over the road as it was constructed when the contracts were made, and was not allowed to ride free on other lines of the company in the various States of the Union where the road has eventually been extended; I accepted the benefits secured under the contract, but it now occurs to me that the lease and option was a personal contract

and not transferable, and I ought not to have accepted, and had no legal right to accept, the service from any save the original lessee."

These considerations were properly dismissed by the chancellor as insufficient to prevent an enforcement of the contract. The judgment is therefore affirmed.