## Farmer, et al. v. Gipson, et al.

(Decided December 21, 1923.)

### Appeal from Hopkins Circuit Court.

1. Estoppel—Person Permitting Partition of Premises Along with Other Lands Estopped to Claim Title.—Where for nineteen years a widow, in accordance with agreement that her land should be considered and embraced in partition of other land by heirs, knowing all the facts, was guilty of such conduct by acquiescence and other acts as to induce belief in heirs that she would not undertake to disturb the partition, and acquiesced throughout that long period in the erection of costly improvements and sale to strangers without protest or objection, she was estopped to assert title.

2. Estoppel—One Not Permitted to Assume Position Inconsistent with Course of Conduct.—Where one has, by a course of conduct, with a full knowledge of the facts with reference to a particular right or title, induced another, in reliance upon such course of conduct, to act to his detriment, he will not thereafter be permitted in equity to assume a position or assert a title inconsistent with such course of conduct.

LAFFOON & WADDILL for appellants.

FOX & GORDON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant, Mary E. Farmer, was allotted a tract of 33 acres of land as her part of the landed estate of her deceased father, and in July, 1867, the same was conveyed to her. She was at the time the wife of A. J.

Farmer, and he at the time owned lands adjoining that allotted to her, and thereafter he became by purchase the owner of still other lands adjoining her tract; in fact his land completely surrounded hers.

They erected a home on the 33 acres of Mary E. Farmer, and the whole place, including her land, was used, cultivated and controlled by her husband as one farm. They resided in the house on her tract until his death in 1899 or 1900, and she has since resided there under the circumstances hereinafter set forth.

A. J. Farmer left surviving him his widow, two daughters, a son, and the daughter of a deceased son.

After the death of A. J. Farmer some of his heirs desired to improve and erect buildings for their own use on certain parts of the land, but did not wish to do this until there was a partition. This was explained to the mother and she agreed and consented that they might proceed with the partition and include in it the 33 acres to which she had title, and as a part of the agreement she was to receive during her life one-third of what was raised on the whole place, and was to continue to occupy the home place. This agreement was carried out, and a partition of the whole tract was had between the three children and the granddaughter. The Illinois Central Railroad ran through the place and divided it about equally, and the 33 acres to which she had title was on the west side of the railroad, and two of the heirs were alloted tracts on the west and two on the east of the railroad. One daughter, Mrs. Cunningham, and the granddaughter, Mrs. Dillingham, were alloted the tract on the west side of the railroad, which embraced the 33 acres to which Mary E. Farmer had title, Mrs. Cunningham being allotted approximately 23 acres thereof, and Mrs. Dillingham 10 acres thereof, and they were each allotted additional lands on that side of the railroad to which A. J. Farmer had title.

Mary E. Farmer was not a party to the partition proceedings, nor did she join in the deeds made, but she had agreed to the same upon the terms stated, and had consented that her 33-acre tract be embraced therein; she knew the deeds made between the children and the grandchild embraced the 33 acres to which she had title, and she knew that the partitioners, in accordance with their agreement and conveyance between themselves, severally took possssion of the parts so allotted, and that each of

them thereafter proceeded to make improvements upon their several tracts, and she knew that Mrs. Dillingham erected on the part of the 33 acres which had been allotted to her a dwelling house and barn, and she knew that during the period of 19 years from 1901 to 1920, when this action was brought, the partitioners had taken possession of their several parts, and that at least two of the four partitioners, including Mrs. Dillingham, had sold and conveyed to others the lands so set apart to them, and throughout that period continued under the agreement to occupy the home and to receive thereunder one-third of the crops raised on the whole place.

Throughout that whole period she acquiesced in and acted under the terms of her original agreement, and the record fails to disclose that she at any time objected to the use made of their several parts by any of the partitioners, or objected to their improving their several allotments, including the improvements made by Mrs. Dillingham on that part of the 33 acres allotted to her, except she testifies she objected to Mrs. Dillingham's erection of her dwelling house on the 33 acres "because I didn't want them there right in front of my house; she would want chickens and I would want chickens, and I didn't want her to build there."

It would appear clear from this that she was not in fact objecting to the improvement by Mrs. Dillingham on the 33 acres because she questioned her right to use the same as she desired, or because she (the plaintiff) claimd title to that 33 acres or the right to control the improvements erected thereon, but merely because the house when erected would be so near to her own home that the chickens at one place might mingle with the chickens at the other place.

Shortly after the partition in 1901, the daughter, Mrs. Cunningham, went to live wtih her mother at the old home place, and continued to live with her at all times thereafter. Some time before the institution of this action, the mother had a serious illness, and the daughter, Mrs. Cunningham, was naturally kind and especially attentive to her at that time. Accordingly in February, 1920, the mother executed a deed to Mrs. Cunningham for the 33 acres, reserving unto herself a life estate, and conveying the same to Mrs. Cunningham for life and in remainder to her bodily heirs, and about two months thereafter this action was instituted.

The Cunninghams came into the action and were made joint plaintiffs with Mary E. Farmer, and the defendants in their answer relied upon the facts stated above as an estoppel against Mary E. Farmer to assert title to the 33 acres.

The facts present a case for the application of the equitable doctrine of estoppel by conduct. For nineteen years appellant, in accordance with her original agreement that her 33 acres should be considered and embraced in the partition, knowing all the facts, was guilty of such conduct by acquiescence and otherwise as to induce the belief in her children and grandchild that she would not undertake to disturb the partition; by agreement or acquiescence throughout that long period in the erection of costly improvements upon the several tracts; by agreement or acquiescence in the sale to strangers of several of those tracts without protest or objection and by her course of conduct throughout that period in failing to protest against or object to any of these things, she led not only her children and her grandchild to erect these improvements, but she thereby induced others to become purchasers of some of the partitioned tracts, including one wherein there was embraced a part of her 33 acres. If it should now be held she was not estopped and that she might now assert her title to the 33 acres, not only would it result in the necessity for a new partition of the lands of A. J. Farmer between his heirs-at-law, not only would it result in the assertion by some of them of liens upon the several tracts for the value of improvements placed thereon by her consent and acquiescence, but it would result in lengthy and complicated litigation affecting the rights of the purchasers of several of these partitioned tracts. It would probably likewise result not only in loss to some of the purchasers, but in the assertion of claims by them against their vendors under their several warranties.

During all this period it was the duty of appellant, Mary E. Farmer, to speak and assert her title to the 33 acres before all these things took place, and all these transactions were had. Her failure so to do places her in such attitude that now equity and good conscience will say to her your conduct has been such we will not now hear you.

Where one has by a course of conduct, with a full knowledge of the facts with reference to a particular

right or title, induced another, in reliance upon such course of conduct, to act to his detriment, he will not thereafter be permitted in equity to assume a position or assert a title inconsistent with such course of conduct, and if he does he will be estopped to thus take advantage of his own wrong. Louisville Sewerage Commissioners v. Gates, 159 Ky. 391; I. C. R. R. Co. v. Doss, 137 Ky. 659; York v. East Jellico Coal Co., 25 K. L. R. 927; Givens v. Providence Coal Co., 22 K. L. R. 1217; 21 C. J. 1202.

Surely it was the duty of Mary E. Farmer to assert her rights and to object to the consummation of this partition which embraced her land, to object to the erection of the improvements thereon, and to object to the conveyance of such parts of the land so set apart as would necessarily affect that partition in which her land was embraced, before so many rights of others were involved and before so many complications, growing out of their rights, had arisen. It would now be practically impossible to place all the parties in their original positions.

She having failed to speak when it was her duty to speak, will not be heard to speak when she should remain silent. As said in Phillips v. Clark, 4 Met. 313:

"If a man is silent when he ought to speak, equity will debar him from speaking when conscience requires him to be silent."

Judgment affirmed.