## Pettit's Administrator v. Goetz.

(Decided Oct. 30, 1935.)

E. B. ANDERSON and CARROLL E. BYRON for appellant.
BEN D. RINGO and ALBERT B. OBERST for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Robert T. Story owned approximately 58 acres of land in five contiguous tracts in Daviess county, which he devised to his wife, Mary E. Story. On June 6, 1923, Story and his wife executed a mortgage to the Federal Land Bank of Louisville on four tracts of land, consisting of 37 2/3 acres, to secure the payment of a note for $3,000 executed by the Storys to the bank. On February 24, 1925, they executed and delivered to the Owensboro Banking Company a mortgage on the remaining tract of land, consisting of 20 1/5 acres, to secure the payment of a $2,000 note. This note was later assigned to the First Owensboro Bank & Trust Company.

Robert T. Story died in November, 1925, and on March 12, 1926, Mary E. Story borrowed $2,000 from Thomas S. Pettit and Alice Pettit, and to secure the loan executed a mortgage to them on the 58 acres of land devised to her by her husband. Mary E. Story died in July, 1929, leaving as her only heir at law G. T. Story, a son, who qualified as administrator of her estate.

On July 9, 1930, the Federal Land Bank instituted an action in the Daviess circuit court against G. L. Story et al., to foreclose its mortgage. In addition to its mortgage and the mortgages to the Owensboro Bank-

ing Company and to the Pettits, there were numerous tax liens and execution liens on the land, and all known lienholders, including the Pettits, were made defendants. During the pendency of the action the Pettits died, and the First Owensboro Bank & Trust Company was appointed and qualified as administrator of Alice Pettit's estate. Several other actions were filed by lienholders. The actions were consolidated, and on March 13, 1931, a judgment was entered fixing the priority of the various liens and ordering sold the 37 2/3 acres of land covered by the mortgage to the Federal Land Bank of Louisville. It was also adjudged that G. L. Story was the only heir at law of Mary E. Story, to whom the land was devised by Robert T. Story. The land was appraised at $5,000, and at the commissioner's sale J. L. Laswell became the purchaser for the sum of $4,910. The purchaser filed exceptions to the commissioner's report of sale, and on May 18, 1931, the exceptions were sustained, the sale was set aside, and the purchase-money bonds were canceled. Thereafter, another judgment was entered by which it was ordered that all of the land owned by Mary E. Story at the time of her death be sold.

The land was again sold by the master commissioner after having been appraised at $7,000, and Nick B. Goetz became the purchaser for the sum of $8,200, on a credit of 6 and 12 months. He executed bonds payable to the respective lienholders and the master commissioner. The master commissioner filed his report on July 22, 1931, and it was confirmed on July 27, 1931. On August 7, 1931, an order was entered permitting the purchaser to pay off the bonds before their maturity by paying interest to date of payment. On the same day Goetz paid off the bonds with the accrued interest thereon, and the master commissioner executed and delivered to him a deed to the land. The bonds and accrued interest amounted to $8,272.37, and under an order of the court Goetz paid this amount as follows:

Federal Land Bank of Louisville ............$3,679.77
S. A. Burns, Drainage Commissioner ........   214.63
J. A. Vittitow ............................   100.45
H. A. Birkhead, Master Commissioner .......   177.46
Sheriff of Daviess County .................   113.10
First Owensboro Bank & Trust Company .... 2,284.96
First Owensboro Bank & Trust Company, administrator Alice Pettit's estate ......... 1,702.00

Thereafter, G. L. Story found a paper signed by his mother, Mary E. Story, and properly witnessed, which purported to be her will. This paper was probated by the Daviess county court September 8, 1931, as the last will and testament of Mary E. Story, deceased. By the terms of this will, Mary E. Story devised all of her real property to her son, G. L. Story, for and during his natural life, with remainder upon his death to her grandson, Robert F. Story. On December 19, 1931, Robert F. Story, who was an infant under 18 years of age, suing by his next friend, brought an action in the Daviess circuit court in which he set out at great length all of the facts enumerated above, and asked that the judgment rendered in the action of Federal Land Bank of Louisville v. G. L. Story et al., be set aside and declared void and of no effect; that the deed executed and delivered to Nick B. Goetz be set aside and canceled; and that the purchase-money bonds executed by Nick B. Goetz be canceled. Nick B. Goetz and all of the parties in the action of Federal Land Bank of Louisville v. G. L. Story et al., were made defendants.

The Federal Land Bank of Louisville answered, stating that the purchase-money bonds executed by Nick B. Goetz had been paid before maturity, and that out of the proceeds it had been paid its debt in full; that it had no interest in the subject-matter of the suit, and it asked that the suit be dismissed as to it. Demurrers filed by Nick B. Goetz and the First Owensboro Bank & Trust Company were overruled, and on February 29, 1932, Goetz filed an answer and cross-petition in which he alleged that on August 8, 1931, he innocently, in good faith, and without knowledge of the existence of the will of Mary E. Story, satisfied the sale bonds executed by him and the accrued interest thereon, amounting in all to $8,272.37, by paying that amount to his codefendants, including $1,702 to the First Owensboro Bank & Trust Company, administrator of the estate of Alice Pettit, deceased; that by virtue of his purchase of the land at the commissioner's sale and of his payment of the purchase price thereof, he was entitled to be subrogated to the liens of the several mortgagees and lienholders whose liens he had satisfied, and that he was entitled to a lien to the extent of $8,272.37, prior and superior to the interest of the plaintiff, Robert F. Story, and his codefendants. Goetz had taken possession of the land

and had made certain improvements thereon, and he asked that he be adjudged a lien for the amount expended by him for such improvements. On March 17, 1932, a judgment was entered adjudging that G. L. Story owned a life estate in the land and that his infant son, Robert F. Story, owned the remainder in fee simple. The former judgment and sale thereunder were set aside and the deed executed by G. L. Story, and acknowledged by the master commissioner of the Daviess circuit court, was set aside and canceled. The land was again ordered to be sold by the master commissioner, and Nick B. Goetz was adjudged a prior lien for $8,272.37, the amount paid by him to lienholders. The commissioner again advertised the land for sale. It was appraised at the sum of $9,500, and Nick B. Goetz, being the only bidder, became the purchaser for the sum of $7,000. No exceptions were filed to the report of sale, and it was confirmed on April 25, 1932.

On August 15, 1932, Nick B. Goetz filed an amended answer and cross-petition, in which he alleged he had paid to various lienholders the sum of $8,272.37, the amount of the bonds executed by him at the first sale and the accrued interest on same, and that he did so under an order of the court directing and permitting him so to do, and when he did so he had no knowledge or information of any kind that there was any defect in the title to the real estate so purchased by him, nor was it possible at that time for him, or any officer of the court, to know of any such defect in the title; that, under the circumstances, he was entitled to recover from the lienholders, to whom he had paid the money, the sum of $1,272.37, the difference between $8,272.37, the amount paid out by him after the first sale, and $7,000, the amount of his bid at the second sale. He further alleged that the mortgage lien of Alice Pettit was the junior lien upon the property, and that he was, therefore, entitled to recover this sum from her administrator or from the heirs of Alice Pettit, to whom the administrator had paid it, and if the whole amount due him could not be recovered from the personal representative of Alice Pettit, or those to whom some part thereof might have been distributed, then he was entitled to recover from the other lienholders who had received a portion of the funds of $8,272.37 theretofore paid by him.

The First Owensboro Bank & Trust Company, ad-

ministrator of the estate of Alice Pettit, deceased, filed a pleading styled, ''Answer to the amended answer and cross petition of Nick Goetz,'' and later an amended answer in which it alleged, in substance, that Nick B. Goetz, after the discovery of the defect in the title and before the second sale of the land had been ordered, filed an answer in the action instituted by Robert F. Story, by his next friend, in which he asked to be subrogated to the rights of the several lienholders and officers of the court to the extent of the money paid to them by him, and to be adjudged a first, prior, and superior lien on the land to secure him in the payment of the sum so disbursed; that in adopting this remedy, and in specifically praying for such relief, he elected to take a first, prior, and superior lien on the land as security for the money theretofore paid out by him, instead of securing judgments against the numerous lienholders and officers of the court for the several sums paid by him to them, and that he was estopped then to claim other and different relief.

Goetz filed a reply and later an amended petition in which he alleged that the First Owensboro Bank & Trust Company, administrator of the estate of Alice Pettit, deceased, received as such administrator the sum of $1,702, which he paid to it as a part of the purchase price for the lands described in the pleadings, and that it distributed the money after it had received notice by the filing of Mary E. Story's will that the title to the land purchased by him at the commissioner's sale was defective, and he asked judgment against the First Owensboro Bank & Trust Company for $1,272.

The court sustained demurrers to the answer and amended answer of the First Owensboro Bank & Trust Company, administrator, and entered a judgment in favor of Goetz against the First Owensboro Bank & Trust Company, administrator of the estate of Alice Pettit, deceased, for the sum of $1,272, with interest thereon from August 8, 1931, but denied him recovery against the First Owensboro Bank & Trust Company in its individual capacity.

The administrator contends that Goetz, who elected to be subrogated to the liens which the proceeds from the purchase-money bonds had discharged, is estopped from claiming from the lienholders, to whose claims he was subrogated, the difference between the amount paid

by him after the first sale and the amount bid by him at the second sale, and we think its contention is sound. After the discovery of Mary E. Story's will, Goetz found himself in a novel but unenviable situation. He had purchased the land in good faith at a commissioner's sale, and had paid off the bonds which had been executed to the various lienholders in the order of the priority of the liens. He employed a competent attorney to examine and report on the title before he paid the purchase money and accepted the deed, and the predicament in which he later found himself resulted through no fault on his part or on the part of the attorney examining the title, or of any party to the action. The lienholders had accepted payment of their lien debts in good faith, and had gone their respective ways. When it developed later that he had purchased the land at an invalid sale, he undoubtedly was entitled to be subrogated to the rights of the lienholders whose liens he had discharged. Conceding for present purposes that he might have proceeded against them to recover the respective amounts paid to them, he did not elect to do so but instead elected to be subrogated to the liens his purchase money had discharged. The court granted him the relief he sought, and the creditors whose lien debts had been satisfied, therefore, had no further interest in the action.

Proof was heard on the issue made in the claim of Goetz v. First Owensboro Bank & Trust Company in its individual capacity as to the good faith of the attorneys who represented him throughout the proceedings, beginning when they examined the title for him after the first sale. The same attorneys represented the bank, and it was claimed that the interest of Goetz and the bank were antagonistic. This was not necessarily true. Goetz's own testimony discloses that he was satisfied with his bargain, and was willing to keep the land provided that his title was perfected. He asked to be placed in the shoes of the lienholders whose lien debts he had paid, and to be given all the rights and priorities which they had enjoyed by virtue of their liens. He was granted the relief he sought, and by his action he said in effect to the lienholders whose claims had been paid, that he was satisfied with a first lien on the land to secure the payment of his claim. Under these circumstances, the lienholders had no interest in the outcome of the second sale, whereas, if Goetz had asserted

a claim against them for the money paid by him under the invalid sale, they would have been interested in seeing that the land sold for its actual value. After representing to the lienholders that he was satisfied to be subrogated to their rights, it would be inequitable to permit him to recover from them the difference between the amount paid by him after the first sale and the amount bid by him at the second sale. His present claim is inconsistent with the claim made by him before the second sale. Where a person has, with knowledge of the facts, conducted himself in a particular manner, he cannot afterward assume a position inconsistent with such conduct to the prejudice of another who has acted in reliance thereon. Farmer v. Gipson, 201 Ky. 477, 257 S. W. 1. While the appellant took no affirmative action by reason of the position assumed by appellee, it did refrain from taking such action as would have been necessary to protect its interest had appellant assumed a different position.

In Bigelow on Estoppel, the author, in treating election and inconsistent positions generally as a phase of estoppel, denominated by him "Quasi-Estoppel," says:

"A party cannot either in the course of litigation or in dealings in pais occupy inconsistent positions. Upon that rule election is founded; 'a man shall not be allowed,' in the language of the Scotch law, 'to approbate and reprobate.' And where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts. * * *" Bigelow on Estoppel, page 732.

We conclude that the court erred in sustaining the demurrer to the answer as amended, of the First Owensboro Bank & Trust Company, administrator of Alice Pettit, deceased, and in entering a judgment against it. The judgment is reversed, with directions to enter a judgment in conformity herewith.