## Cleveland Wrecking Co. v. Aetna Oil Co.

June 17, 1941.

As Extended on Denial of Rehearing Oct. 7, 1941.

Woodward, Dawson & Hobson and James E. Fahey for appellant.

Hubert T. Willis for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The Cleveland Wrecking Company, appellant in this appeal, is a corporation engaged in business as a wrecking contractor. The nature of its business is dismantling and removing various buildings and structures and removing the old material and debris from the site upon which such buildings have been erected in order that new buildings might be constructed thereon. It appears that the consideration appellant receives for its services in dismantling buildings and removing the material and debris from the premises is the material and salvage of the old buildings, which material it cleans and classifies and sells the same to anyone who may desire to purchase it.

On June 12, 1940, appellant leased from the Louisville Railway Company certain premises on Eighteenth Street and Broadway in the city of Louisville, Kentucky, on which to store the salvage of a number of buildings which appellant was engaged in dismantling and remov-

ing from the premises on which they were erected. The lease provided that:

"(1) The Landlord hereby leases to the Tenant for a period of one year, beginning June 12, 1939, and ending June 11, 1940, and then continuing until cancelled by either party in the manner as hereinafter set forth, the following described property situated in Louisville, Jefferson County, Kentucky." (Description omitted.)

Clause 9 of the lease, out of which this action arises, reads:

"In the event that the Landlord at any time during the term of this lease, or any continuance of same has a bona-fide sale for the leased premises, or any portion of it, then the Landlord may at its option cancel this lease upon ninety (90) days written notice to the Tenant, and the Tenant agrees to vacate the property within this ninety (90) day period. If this lease extends beyond the original twelve (12) months, the tenant may cancel the lease on sixty (60) days notice in writing at any time after June 11, 1940."

Appellant (lessee) entered upon the leased premises and made certain repairs and installed certain equipment thereon, making them suitable for the purpose and use intended and placed a certain amount of old building material and salvage on the premises.

On December 5, 1940, the Louisville Railway Company, lessor, sold and conveyed the leased premises to appellee, Aetna Oil Company, but did not exercise its (lessor's) right to cancel the lease under the ninety days' notice provision contained in clause 9 of the lease quoted above, or otherwise notify appellant of its intention to sell the property, or of the sale thereof, until December 10, 1940, when it (Louisville Railway Company, lessor) wrote the following letter to appellant:

"This is to advise you that the Louisville Railway Company has sold to Aetna Oil Company, 1202 South Third Street, Louisville, Kentucky, the property located on the southwest corner of 18th and Broadway, Louisville, Kentucky, a portion of which was leased to you under date of June 13, 1939.

"Your lease has been assigned to the purchaser,

which of course automatically succeeds to all our rights and obligations under the lease.

"Very truly yours,
"F. H. Miller
"President and General Manager."

Under date of December 11, 1940, appellee wrote the appellant this letter:

"This will inform you that Aetna Oil Company has purchased from the Louisville Railway Company the premises occupied by you at 1810 West Broadway, Louisville, Kentucky. The lease, naturally, was assigned to us and all its terms and conditions will remain in effect. You will, however, mail us a check for the monthly rental beginning December 12, 1940, and in subsequent months I am instructing our auditing department to forward you a statement monthly.

"Very truly yours
"Andrew J. Brewer
"Secretary-Treasurer"

On January 8, 1941, appellee wrote appellant another letter which reads:

"It would facilitate our bookkeeping, and perhaps yours, if the rent on the property you lease from us at 18th and Broadway, in Louisville, Kentucky, was paid on a calendar month basis. Accordingly, we billed you for December rent from the 13th thru the 31st only and in January we billed you for a full month at $150.00 covering the period 1/1/41 thru 1/31/41. If acceptable to you we would like to continue billing you on the calendar month basis.

"As the third paragraph of your lease with the Louisville Railway Company, of June 13, 1939, which we acquired thru purchase of the property, specifies the 12th day of each month as the due date for the ensuing month's rent, we wonder if you would be willing to agree to paying this rent on a calendar month basis, signing the copy of this letter and returning it to us to be filed with the lease and superceding the lease only as to the paragraph referred to? The original of this letter will similarly complete your records.

"Very truly yours,
"Aetna Oil Company, Inc.
"Chas. Price
"Auditor"

It appears that appellant complied with the requests indicated in the above letters in respect to the payment of rent, etc., and no further transactions or events transpired between the parties until February 6, 1941, when appellee wrote appellant the following letter:

"In accordance with the lease of June 13, 1939, from Louisville Railway Company to your company, which lease was assigned by Louisville Railway Company to Aetna Oil Company when we recently purchased the property which you occupy at 1810 West Broadway, you are hereby informed that we elect to exercise the cancellation clause in your lease and that we shall require the premises which you occupy by May 8, 1941.

"Very truly yours,
"Andrew J. Brewer
"Secretary-Treasurer."

Later March 7, 1941, appellee further notified appellant of its intention to cancel the lease on the sixty days' notice provision contained therein, insisting that appellant's right to cancellation on sixty days' notice is not supported by consideration, unless a correlative right to cancel the lease upon a like notice be allowed appellee, and without such correlative right to appellee the lease would be one in perpetuity and void for that reason.

Appellant refused to acknowledge appellee's right to terminate the lease under either of the provisions mentioned, and a dispute arose between the parties as to their respective rights under the lease, whereupon appellee brought this action in the Jefferson circuit court under the provisions of the Declaratory Judgment Act seeking a declaration of the rights of the parties, and asked that the court adjudge that appellee had the right to cancel the lease under the ninety days' provision thereof because, (a) the Louisville Railway Company had sold the property and its right to cancellation passed to appellee, and that the latter could now exercise the same right of cancellation that the lessor (Louisville Railway Company) might have exercised at the time of the sale of the leased property, and (b) that appellee had the correlative right to cancel the lease under the sixty days' notice provision, for reasons stated in notice of March 7, 1941, stated above.

The defendant (appellant) filed its answer admitting the execution of the lease and the sale of the leased prem-

ises by lessor to appellee, but denied appellee's right to cancel the lease upon any of the grounds set out in the petition.

By paragraph 2 of the answer defendant stated that by the terms of clause 9 in the lease the landlord may cancel the lease only if the landlord has a bona fide sale of the leased premises; that the only sale of the leased premises which occurred subsequent to the execution of the lease was the sale by the Louisville Railway Company to the appellee; that at the time the sale was made the Louisville Railway Company was the ''landlord'' within the meaning of that term as used in clause 9 of the lease and that the Louisville Railway Company has never given appellee any notice of cancellation of the lease.

In paragraph 3 of the answer defendant set out the nature of its business in which it was engaged and that it received its compensation from the proceeds from the sale of salvaged material and in order to obtain purchasers for its salvage it is necessary to haul the salvage to yards and to clean and recondition much of it and to sort and grade all of it and place it on display in such a manner as to attract prospective customers. Defendant further stated that on or about December 6, 1938, it entered into a contract with the Whittenberg Construction Company whereby it undertook to demolish a large number of buildings covering approximately twenty-five square blocks in the city of Louisville and to clear the sites upon which said buildings stood for the use and benefit of the Louisville Municipal Housing Commission in order that a low rent housing project might be constructed. Defendant further stated that because of the vast amount of salvage obtained from these projects it was necessary to obtain large tracts of land or yards in order to recondition said salvage and display it to prospective purchasers; that it leased two tracts or yards in the city of Louisville, one at 1315 East Main Street and the other at 1810 West Broadway, the latter being the one in dispute in this action. It further stated that after taking possession of the premises at West Broadway under the lease in question, it made extensive improvements to the structures and buildings situated on the leased premises and other equipment necessary for the conduct of its business, etc., at the expense of the defendant of approximately $5,200; that during the period from June 12, 1939 (date of the lease), to December 20, 1940 (fifteen days after the sale of the property by the lessor to appellee),

it was continuously engaged in demolishing the buildings in the projects above set out and transporting the salvage from said work to its yards at 1315 East Main Street and Eighteenth and Broadway; that because of the seasonal fluctuations it became expedient and necessary for defendant to consolidate its two yards referred to above, in order that its overhead and fixed charges might be reduced, and that on or about December 1, 1940, it was thus presented with a choice of transporting its salvage which remained undisposed of at its yard at East Main Street to its yard at West Broadway and retaining possession of the latter and cancelling its lease on the former, or, of transporting its salvage, which remained undisposed of at its yards at West Broadway to its yards at East Main Street and cancelling its lease of the yard at West Broadway.

Defendant further stated that before making its decision in respect to which yard it would maintain it received the letter from the Louisville Railway Company dated December 10, 1940, advising it (defendant) of the sale of the property to appellee, and also the letter from appellee dated December 11, 1940, in which it advised defendant that it had purchased from the Louisville Railway Company the premises in question at West Broadway and that the lease was assigned to the purchaser "and that all its terms and conditions will remain in effect," and further set out the other letters in reference to the time and method of payments of rent.

Defendant further stated that it complied with plaintiff's requests as set out in its letter of January 8, 1941, and has continued to send its monthly rental checks promptly to the plaintiff pursuant to the instructions contained in the letter. It further stated that it understood these letters to mean that the said lease would not be cancelled by its landlord, but that rather the plaintiff (appellee) desired the continued occupation of the leased premises by the defendant and desired the continuance of the lease in full force and effect as indicated in appellee's letter of December 11, 1940, and desired the continued payment of the rent reserved in the lease by the defendant to the plaintiff as the defendant's new landlord, and that conditions would remain the same as if there had been no sale of the property. Defendant further stated that after receiving the said letters it relied upon the plaintiff's representation to the effect that the lease which the defendant had entered into with the Louisville

Railway Company and all of its terms and conditions would continue in full force and effect, and in reliance upon such representations the defendant decided to maintain its yards on the leased premises at West Broadway and give up and relinquish its yards at East Main Street, and that pursuant to this decision the defendant transported all of its salvage located at its yards at East Main Street comprising 400,000 board feet of lumber, 500,000 brick and miscellaneous salvage of all kinds to its leased premises at West Broadway at an expense of approximately $3,200, and that in further reliance upon said representations defendant continued to make improvements on the leased premises at its own expense. Defendant further stated:

"That if this plaintiff had requested the Louisville Railway Company to cancel the said lease the Louisville Railway Company could have done so pursuant to Clause 9 of said lease and defendant could have transferred its salvage located on the said leased premises to its yards at 1315 East Main Street and thus avoided the expense of transporting the salvage at its yard at 1315 East Main Street to the said leased premises.

"Defendant states that after receiving the said letters set out above and in reliance upon the representations of the plaintiff made therein, this defendant cancelled its lease on its yards at 1315 East Main Street and this defendant cannot now move its salvage and belongings now located on the leased premises to a new yard without great expense to it, all of which would and could have been avoided but for the representations of this plaintiff as set out in said letters.

"Defendant states that further relying on plaintiff's representations as set out above, the defendant was induced to and did transport its salvage to the leased premises as above set out and made the improvements on said leased premises as above set out, all at large sacrifice and expense to it as above set out, and the defendant further states that, this plaintiff having represented to the defendant as set out above that the said lease and all its conditions and covenants would remain in full force and effect and the defendant having relied upon said representations to its detriment, sacrifice and expense, the plaintiff cannot now, as it attempts to do in this ac-

tion, cancel the said lease under Clause 9 thereof on the ground that there was a sale of the leased premises on December 5, 1940 by the Louisville Railway Company to this plaintiff, and that the defendant relies upon the foregoing fact in bar and in estoppel of this action.''

The plaintiff (appellee) demurred to paragraphs 2 and 3 of defendant's answer which demurrer the court sustained, and defendant failing to plead further, the court entered judgment adjudging, in substance, that plaintiff had the right to cancel the lease under both the ninety days' notice provision because of the sale of the premises by the Louisville Railway Company to the plaintiff, and also under the sixty days' notice provision for the reasons we have already indicated. This appeal follows.

Since a demurrer is a searchlight for the entire record, plaintiff's demurrer to defendant's answer brought into consideration the petition and all the facts and attendant circumstances revealed in all the pleadings which must be taken into consideration in determining the demurrer.

It is not denied, nor could it well be, that the Louisville Railway Company had the right to cancel the lease under the ninety days' notice provision when it sold the property to the plaintiff. But it did not exercise such right and sold the property to plaintiff including the lease with all its terms and conditions and did not notify defendant of its intention to sell the property or express any desire or intention to terminate the lease.

The record does not disclose whether or not the lease was of record thus affording plaintiff notice thereof, but since plaintiff raises no question of being an innocent purchaser we assume that it had notice of the lease, either actual or constructive, before it purchased the property. In the circumstances appellee (plaintiff) had the right to require the Louisville Railway Company to exercise its right to terminate the lease pursuant to the ninety days' notice provision therein before it (plaintiff) purchased the property; or, plaintiff might have notified defendant of its intention to purchase the property and of its desire to terminate the lease because of the sale of the property. With knowledge of all these facts, plaintiff remained silent until after it had purchased the property and immediately thereafter it wrote to defendant the

letters referred to herein, the first of which being dated December 11, 1940, notifying the defendant that it had purchased the property and further stated that "The lease, naturally, was assigned to us and all its terms and conditions will remain in effect." On January 8, 1941, more than a month after the sale of the property and approximately one month after writing the letter referred to above, plaintiff wrote defendant another letter suggesting a change in the dates for the payment of rent, apparently for the convenience of bookkeeping purposes, but there was nothing in the letter indicating any intention or desire on the part of plaintiff to terminate the lease. The trend of that letter, like the previous one, indicated that plaintiff contemplated that defendant would remain on the premises subject to termination by the landlord in case of a bona fide sale by giving the lessee ninety days' notice.

Since a demurrer only admits facts well pleaded but does not admit conclusions of law, the decisive question is whether or not the facts set out in defendant's answer and admitted on demurrer amount to equitable estoppel, and this depends on whether or not the facts alleged in the answer were sufficient to induce a reasonably prudent minded person to believe that the plaintiff did not contemplate a termination of the lease before the expiration of its term.

In Pettit's Adm'r v. Goetz, 261 Ky. 107, 87 S. W. (2d) 99, 102, it is said:

"Where a person has, with knowledge of the facts, conducted himself in a particular manner, he cannot afterward assume a position inconsistent with such conduct to the prejudice of another who has acted in reliance thereon. Farmer v. Gipson, 201 Ky. 477, 257 S. W. 1. * * *

" 'A party cannot either in the course of litigation or in dealings in pais occupy inconsistent positions. Upon that rule election is founded; "a man shall not be allowed," in the language of the Scotch law, "to approbate and reprobate." And where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts. * * *' Bigelow on Estoppel, page 732."

We have reached the conclusion, therefore, that the

fact that appellee purchased the property with knowledge of the lease and all its terms and conditions, knowing that the lessor had taken no steps to exercise its right to terminate the lease by giving the required notice, and took no step or action to require its vendor or contemplated vendor (lessor) to exercise its right to cancel the lease, and purchased the property under these conditions and known facts, followed by the letters referred to, furnished reasonable grounds for defendant to believe that the lease would remain in effect under its terms and conditions as though no sale of the property had been made. It follows, therefore, that the chancellor erred in sustaining the demurrer to paragraphs 2 and 3 of defendant's answer.

It is further insisted that the plaintiff has the right to terminate the lease pursuant to the sixty days' notice provision therein, basing its contention upon (a) the theory that under this provision of the lease it is one at the will of one party and hence must also be at the will of the other, and (b) there was no consideration for the tenant's right to cancel the lease and for that reason it was unilateral.

It is to be noted that the lease was for a period of one year, continuing until cancelled by either party in the manner therein set forth, (clause 9) namely, the landlord had the right to cancel the lease upon ninety days' notice to the tenant in the event of a sale of the property, either within the original twelve-month period or any continuance of same, and the tenant had the right to cancel the lease anytime after the expiration of the original twelve-month period on sixty days' notice to the landlord. It is thus seen that the landlord had a right of cancellation in case of a sale, within the original twelve-month period, and, on the other hand, the tenant had the sole right of cancellation in case of holding over or extension beyond the twelve-month period. Also, the rent stipulated in the lease was that:

" 'During the term of this lease the Tenant will pay to the Landlord, in equal monthly installments of One Hundred Fifty Dollars ($150.00) payable in advance on the 12th day of each month, an annual rental of Eighteen Hundred Dollars ($1,800.00).' "

Although the term of the lease after the expiration of the first year might appear to be indefinite, yet since the rental is on a yearly basis it appears that the lease

is on a year to year basis and creates a tenancy from year to year with right of renewal in the lessee. 1 Tiffany on Real Property, 3d Ed., page 266, Section 169, 32 Am. Jur., Landlord and Tenant, Sections 71, 73.

In Southeastern Land Company v. Clem, 239 Ky. 417, 39 S. W. (2d) 674, 675, one of the issues involved is similar to the question under consideration in the present case. The lease was for a term of five years with a provision that the lessee was to surrender the premises if the lessor desired them for his own use, but without any correlative right to the lessee. The lessee contended that since the lease was lacking in mutuality he had the right to surrender it. In rejecting that contention the court said:

> "But the point is made that the lease is one falling within the rule that an estate terminable at the will of one of the parties is terminable at the will of the other, though it purports to be terminable at the will of one only. Tennessee Oil, Gas & Mineral Co. v. Brown [6 Cir.], 131 F. 696, 701. It is generally held that the rule is without application to a lease for a defined and permissible term, but which reserves to one of the parties an option to terminate it before the expiration of the term. * * *"

In Vokins v. McGaughey, 206 Ky. 42, 266 S. W. 907, 909, 39 A. L. R. 275, the lease was to take effect March 28, 1911, and continue in effect until January 1, 1912, with a further provision that the lessee was to have the option on or before January 1, 1912, of leasing the premises for the following year ending January 1, 1913, at the same rental and with a like option for each succeeding year. The landlord brought an action to cancel the lease, contending first that it did not provide for a perpetual lease but that if such was the proper construction of the lease it was unilateral and unenforceable because it was optional with the tenant as to whether he would continue the lease under the terms provided therein. The court held that the terms of the lease provided for the right of perpetual renewals by the lessee and that it was valid and enforceable. In reference to the alternative contention of the landlord, that since the unqualified right to cancel or renew was given to the lessee and no correlative right provided for the landlord, that clause of the lease was unilateral, without consideration, and void, the court said:

"Upon the second and last contention of plaintiff but little need be said. The rule seems to be that, where an option to do a particular thing is given to one of the parties to a contract, if supported by a sufficient consideration, it is enforceable, and it is not then lacking in mutuality, or invalid on the ground that it is unilateral, since the other party has been paid to extend that right; *   *   *."

The case, supra, was referred to with approval in the case of Union Gas & Oil Co. v. Wiedeman Oil Company, 211 Ky. 361, 277 S. W. 323. In Montanus et al. v. Buschmeyer et al., 158 Ky. 53, 164 S. W. 802, the lease involved in that case was for a term of five years at an agreed rental of $125 per month. The lease also provided that in the event the premises or any part thereof shall, during the term of the lease, be destroyed by fire or other casualty, the lessor may at anytime within five days after the happening of such casualty, cancel the lease, and unless he so determined, the rent stipulated to be paid, or a just and proportional part thereof, would be suspended or abated until the premises shall have been rebuilt by the lessor. A fire occurred within a few days after the lease contract was executed and the lessor notified the lessee that he would elect to restore the premises and when restored he would expect to have the lease continued. After the premises had been rebuilt the lessee refused to occupy them and the landlord sued for his rent. The lessee defended on the ground that the clause of the contract leaving it optional with the landlord to terminate the lease in the event of a casualty, or to rebuild the premises and continue the lease was unilateral and unenforceable, since there was no such correlative right extended to the lessee. In rejecting this contention, the court said:

"It is true, in the event of fire, that appellees [lessors] are to be the sole judges of the fact as to whether the premises have been rendered unfit for habitation for the purposes designed. They are also the sole judges as to whether they will cancel the lease, and also as to whether they will rebuild, but these were rights which appellees reserved in the contract, and with a full knowledge of same appellants entered into the contract and took possession of the premises. While the *clause* quoted is in a sense unilateral, still the same may be said of most

any clause or stipulation in every contract. The question of mutuality is determined from a consideration of the *contract* in its entirety. Ordinarily contracts are made up of several clauses, covenants, and stipulations, and under each of which, as in this one, one of the parties is perhaps the sole beneficiary, but each clause or covenant is treated as an inducement or consideration for the others. Appellants rely upon the case of Rehm-Zeiher Company v. F. G. Walker Co., 156 Ky. 6, 160 S. W. 777 [49 L. R. A., N. S., 694]:

" 'Unless a contract is binding on both parties, it is not binding on either of them.'

"This proposition cannot be gainsaid, because, treating the contract as a whole, it must be binding on both, or else it is binding on neither; but it has never been held that, unless a single clause or covenant in a contract is binding on both parties—that is, reciprocal—then the whole contract, or such single clause of it, is thereby invalidated.

"Boiling down the contention of appellant, it seems that under this clause the lessors have the right to cancel the lease, while the lessees have no such right. If this clause constituted the whole contract, there would be more force in the argument, but, as above indicated, leases are constantly made in which one of the parties is given various options or privileges without any corresponding privilege to the other, and it has never been held that the lease was rendered void by such a provision. * * * This court has frequently upheld the validity of an option to purchase premises during or at the termination of a lease, although it was conceded that the lessee could not be compelled to exercise such an option. Taken separately—that is, not in connection with the other parts of the contract—such an option is unilateral, but this court has upheld them because they are a part of the contract as a whole, and considered as inducements or considerations actuating the parties in the beginning. The following are typical cases: Bank of Louisville v. Baumeister, 87 Ky. 6, 7 S. W. 170, 9 Ky. Law Rep. 845; Bacon v. Kentucky C. Ry. Co., 95 Ky. 373, 25 S. W. 747, 16 Ky. Law Rep. 77; Murphy, Thompson & Co. v. Reed, 125

Ky. 585, 101 S. W. 964, 31 Ky. Law Rep. 176, 10 L. R. A. (N. S.) 195, 128 Am. St. Rep. 259.

"The Baumeister Case, supra, makes the distinction in the following language:

" 'It is true, as argued, "a contract must be mutual, and one party cannot be bound without the other." But that does not mean that any one or more acts to be done by one of the parties must necessarily be simultaneous with the consideration paid or agreed to be paid by the other.'

"The doctrine is also stated in the case of Bacon v. Kentucky Central Ry. Co. [95 Ky. 373, 383, 25 S. W. 747]:

" 'It is now well settled that an optional agreement to convey or renew a lease without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity, if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true consideration for it. * * * In this case the agreement was executed the same time with the lease, and was part of the same transaction, and must, for this purpose, be treated as if part of the lease.'

"The court, in the same case, says:

" 'We must conclude that each and every stipulation on the part of one of the contracting parties is supported by and induced by each and every stipulation on the part of the other.' "

It is to be noted that clause 9 of the lease consists of two separate sentences which must be read and construed together rather than construed separately as though either contained the whole contract. By the first sentence the landlord is given the sole right to cancel the lease, in the event of a sale, during the first twelve-month period or any time thereafter, without any correlative right to the tenant during the first twelve-month period. The second sentence gives the tenant the right to cancel after the expiration of the original twelve months on sixty days' notice. It is apparent, therefore, that the landlord's exclusive right to cancellation during the *first twelve-month period* furnished a consideration for the

tenant's right to cancel on sixty days' notice *after* the original twelve-month period. We conclude, therefore that clause 9 of the contract is not unilateral or otherwise invalid.

Plaintiff cites and relies upon numerous authorities, the most favorable one to its contention being Daniel Boone Coal Company v. W. H. and Mahala Miller, 186 Ky. 561, 217 S. W. 666. The lease involved in that case speaks for itself, as appears in the opinion, and upon examination of that contract as a whole compared with the one involved in the present case, it is doubtful whether or not it militates against the Vokins and Montanus cases, supra. If it be conceded, however, that it is in conflict with those cases and the conclusions we have reached herein, we are not inclined to follow that case, since it appears to be contrary to the weight of authority.

For the reasons stated the judgment is reversed and remanded with directions to set it aside and for proceedings consistent with this opinion.

Whole court sitting.