John LAUGHEAD, Movant,

v.

COMMONWEALTH of Kentucky, DEPARTMENT OF TRANSPORTATION, BUREAU OF HIGHWAYS, et al., Respondents.

Supreme Court of Kentucky.

July 6, 1983.

As Modified on Denial of Rehearing Oct. 12, 1983.

Ed W. Tranter, Newport, for movant.

Henry C. Germann, Kentucky Bureau of Highways, Covington, for respondents.

JAMES G. WOLTERMANN, Special Justice.

The facts of this case are largely undisputed. The movant, John Laughead, was the sole owner of a ferry boat operation, commonly referred to as the Coney Island Ferry, from its inception in 1933 to its closing in 1978. The ferry operated from Brent, Kentucky in Campbell County, across the Ohio River to a landing on Eldorado Avenue on the Ohio shore. The operation was essentially seasonal in nature and coincided with the schedule of Coney Island Amusement Park, Sunlite Swimming Pool and River Downs Race Track. Although the nature of the franchise was the transportation of the general public, it is apparent that the patrons of these enterprises made up the bulk of the ferry boat's business. Also it is clear that the ferry boat operation was for the benefit of pedestrians and did not transport automobiles or other types of vehicles. The original ferry franchise was granted to the movant by the Commonwealth of Kentucky in 1937 for a period of twenty (20) years and was renewed in 1957 for an additional twenty (20) year period.

In 1975, movant became aware that he might be entitled to compensation from the respondent, Commonwealth of Kentucky, by virtue of the construction of the Combs-Hehl Interstate 275 Bridge crossing the Ohio River at Brent, Kentucky. The statutory authority for such compensation is contained in KRS 180.276 as follows:

"Prior to the opening for public use of any interstate bridge, the construction of which is authorized by any law of the Commonwealth of Kentucky, regardless of the state agency, commission or administrative body so authorized to make such construction, the state agency, commission or administrative body so authorized to construct, operate and maintain such interstate bridge shall purchase the ferry, equipment, franchises, rights and privileges used in connection with the operation of any ferry which has been in continuous operation for at least fifteen (15) years prior thereto and which is located within five (5) miles of the site of said bridge, and pay the owner therefor a fair cash value; provided, that in the event such agency, commission or administrative body and the owner of such ferry shall be unable to agree upon a fair cash value, the valuation of such property shall be determined by three (3) persons; one (1) to be selected by the agency authorized to make such construction, one (1) to be selected by the owners of the ferry and the third to be selected by these two (2). The ferry shall be valued as a going concern, but no allowance shall be made for future growth. In the event the owner of such ferry shall not agree to the establishment of such valuation according to the foregoing method, then in such event, the agency, commission or administrative body shall not be required to purchase such assets from the owner of the ferry".

Based on the statutory language, movant wrote to the respondent on December 26, 1975 and requested the respondent to begin negotiations pursuant to this statute. It is uncontroverted that the ferry operation is within five (5) miles of the location of the Combs-Hehl Interstate 275 Bridge. The response of the respondent was that it would not negotiate pursuant to the statute in that the respondent held the position that KRS 180.276 was unconstitutional. Movant continued his request to negotiate in subsequent years and the respondent refused to

negotiate based on its opinion concerning the statute.

In 1977, the movant failed to renew his franchise for an additional twenty (20) year period. At the time that his franchise came up for renewal, the bridge construction had already been two (2) years in progress and the completion was set for approximately 1979. Despite his lack of a franchise, the movant continued to operate his ferry boat until August 30, 1978 on which date the movant sold the two (2) ferry boats that were used in his business. On December 19, 1979, the Combs-Hehl Interstate 275 Bridge was opened for vehicular use by the general public.

On May 13, 1980, movant filed his complaint in the Franklin Circuit Court requesting a mandatory injunction to compel the respondent to follow the legislative mandate set out in KRS 180.276. The respondent maintained that it was not required to purchase the ferry operation under KRS 180.276 because movant had allowed his franchise to lapse in 1977 and sold his equipment in 1978, therefore, at the time the bridge was opened for public use, movant was not in continuous operation for the immediately preceding fifteen (15) years. The Franklin Circuit Court concurred with the position of the respondent and entered judgment on behalf of the respondent, and the Court of Appeals affirmed. We reverse.

■ The doctrine of equitable estoppel is controlling in this case. The doctrine is well stated in 31 C.J.S. Estoppel § 108, pages 548–549 as follows:

"The doctrine of equitable estoppel precludes a person from maintaining a position or attitude inconsistent with another position or attitude which is sought to be maintained at the same time or which was asserted at a previous time; and, as a general rule, where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted in reliance on such conduct or representations. The doctrine requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party."

Kentucky cases are in concurrence with this position. See *Hicks v. Combs,* 311 Ky. 149, 223 S.W.2d 379 (1949); *Cleveland Wrecking Co. v. Aetna Oil Co.,* 287 Ky. 542, 154 S.W.2d 31 (1941); *Pettit's Adm'r. v. Goetz,* 261 Ky. 107, 87 S.W.2d 99 (1935); *American Oak Leather Co. v. Cleveland, C.C. & St. Louis Railroad Company,* 216 Ky. 611, 288 S.W. 347 (1926).

The respondent, in 1975, held to the position that it was not required to negotiate with movant, in spite of the direct requirements of KRS 180.276. Respondent continuously held to this position until October 1979 when this Court upheld the constitutionality of the statute. Following the decision upholding the constitutionality of the statute, the respondent took the position that it was not required to purchase the ferry operation from the movant because the operator failed to meet the continuity of ownership requirement of the statute. In essence, the respondent first concluded that there was no valid statute and then took the inconsistent position of relying on a defense existing in the statute to which it had previously ascribed no validity. Based on the original position of respondent, movant was lulled into inaction when the franchise came up for renewal in 1977 and failed to renew the franchise for an additional twenty (20) year term. This failure then worked to movant's detriment when the respondent relied on the continuous operation requirement of the statute. Granted, the respondent based its position on the alleged unconstitutionality of the statute, but in Kentucky a statute is presumed constitutional until proven otherwise. See *United Dry Forces v. Lewis,* Ky., 619 S.W.2d 489 (1981); *Foster Trading Corp. v. Luckett,* Ky., 303 S.W.2d 315 (1957). In any event, it is the position of the respondent not the theory on which it is based, that gives rise to the inconsistency. Equity will not allow the respondent to benefit from

the inconsistent position. We, therefore, conclude that respondent is estopped from denying movant the benefit of KRS 180.276 based on the movant's premature withdrawal from the ferry boat business.

We reach this conclusion mindful of the fact that movant sold his equipment in 1978, since it is the franchise that gives rise to movant's status as a ferry boat operator, which status was lost when he failed to renew this franchise in 1977. If anything the sale in 1978 was an attempt by movant to mitigate damages which he is required to do even when the taking is by the Commonwealth. See *City of Lexington v. Chenault,* 151 Ky. 774, 152 S.W. 939 (1913); *City of Dayton v. Rewald,* 168 Ky. 398, 182 S.W. 931 (1916).

■ Respondent also claims that the statute is inapplicable to the type of ferry boat operation which was conducted by movant. Specifically respondent maintains that the movant's operation was basically of a private rather than of a public nature and that it was designed for pedestrian travel rather than vehicular travel. Since the construction of the Interstate 275 Bridge provided for vehicular traffic for the general public, to the specific exclusion of pedestrian travel, the respondent concludes that the movant's operation was not within the legislative intent of KRS 180.276. The facts, however, are undisputed that movant maintained a franchise granted by the Commonwealth of Kentucky for the operation of a ferry boat from 1937 to 1977. The statute refers to "the operation of any ferry". If the legislature had wished to delineate between different types of ferry boat operations, it only needed to say so. Having chosen to use the word "any", it is assumed that no distinction was intended.

The Ferry Boat operation should be valued as a going concern at its value on December 26, 1975, the date Laughead wrote to the respondent and requested negotiations pursuant to KRS 180.276. Since the movant has already sold his boats and equipment, it will be necessary to deduct the money received from the sale of these boats and equipment from the fair cash value of the ferry boat operation as determined pursuant to KRS 180.276.

The judgment is reversed for further proceedings consistent with this opinion.

STEPHENS, C.J., AKER and LEIBSON, JJ., and WILLIAM L. SULLIVAN and JAMES G. WOLTERMANN, Special Justices, concur.

VANCE, J., dissents by separate dissenting opinion.

STEPHENSON, J., joins in his dissent.

VANCE, Justice, dissenting.

I respectfully dissent from the view expressed by the majority. The statute does not require any specific form of negotiation at any particular time. It simply required that the Commonwealth purchase the ferry, equipment, franchise, rights and privileges used in connection with the operation of any ferry which had been in continuous operation at least fifteen years prior to the opening of any interstate bridge within five miles of the site of operation of the ferry. The statute requires that the purchase be made before the bridge is opened to the public.

In 1977, the bridge was under construction. It was not opened to the public until December 19, 1979. Even if the Commonwealth had conceded the constitutionality of the statute, it was not required to begin negotiations for the purchase of the bridge in 1977. It could have delayed its attempts to purchase as long as it desired to but of course, if the Commonwealth had not completed the purchase by the time the bridge was ready to be opened to public use, it could not open it until the purchase had been completed.

The movant meanwhile could continue the operation of the ferry under its franchise.

The Commonwealth did nothing to cause movant to sell his ferry boats or to fail to renew his franchise. In fact, there is no showing in the record as to whether the franchise was renewable upon competitive

**232**

bidding and, if so, that movant would have been the successful bidder.

If movant had continued his ferry operation he could have required the Commonwealth to pay him its fair cash value before the bridge could be opened. Instead, he made no effort to renew his franchise, and he sold the equipment a year or longer before the bridge was ready to open. There is some suggestion in the record that the reason for the sale was that it was very advantageous to movant.

So it came to pass that when the Commonwealth was ready to open the bridge, the movant was not in the ferry business. He had nothing for the Commonwealth to purchase, no ferry, no equipment, no franchise, and no rights or privileges incident thereto. Because he had nothing to sell, it is difficult for me to understand what claim the movant now has.

I see no basis in this case for application of the doctrine of equitable estoppel.

STEPHENSON, J., joins in this dissent.