Curtis KEETON; Ruth J. Collier; James G. Gibson; Hobart M. Greene, Jr.; and Joe B. Cartwright, on behalf of themselves and all others similarly situated, Appellants,

v.

CITY OF ASHLAND, Kentucky; A.R. Dunnigan, Mayor; Pete Gute, Commissioner; Leslie Kevin Gunderson, Commissioner; Paul Reeves, Commissioner; Mike Stewart, Commissioner; William Fisher, City Manager; David Johnson, Finance Director, Appellees.

No. 93–CA–000800–MR.

Court of Appeals of Kentucky.

July 1, 1994.

Discretionary Review Denied by Supreme Court Oct. 19, 1994.

H. David Hermansdorfer, A. Scott Coburn, Hermansdorfer & Coburn, Ashland, for appellants.

Richard W. Martin, III, Kevin P. Sinnette, Ashland, for appellees.

Thomas J. Keuler, Denton & Keuler, Paducah, for amicus curiae, City of Paducah, Ky.

Kerry D. Smith, McMurry & Livingston, Paducah, for amicus curiae, Board of Trustees of the Policemen's & Firefighter's Retirement Fund of the City of Paducah.

Before HUDDLESTON, JOHNSON and McDONALD, JJ.

JOHNSON, Judge:

This appeal involves an issue of first impression relating to Kentucky Revised Statutes (KRS) Chapter 95. The Boyd Circuit Court ruled that KRS 95.859(3) does not require the City of Ashland (the City) to provide funding for annual cost of living adjustments for pension beneficiaries; and that action taken by the pension fund board in setting a cost of living adjustment was without statutory authority since the pension fund could not support the increase without additional funding by the City. We affirm.

In 1956, the Kentucky Legislature enacted KRS 95.851 through 95.991, creating policemen and firefighters' retirement funds in cities of the second class. The funds were to provide benefits to meet "the hazards of old age, disability, death, and termination of service, thereby encouraging qualified personnel to enter and remain in the service of such departments." KRS 95.853. As of August 1, 1988, these funds were closed to new members, with new employees being placed in the county employees retirement system. KRS 95.852(2). After August 1, 1988, all active members of the Fund of the City of Ashland (a city of the second class) elected to transfer their membership from the Ashland Fund to the county fund pursuant to KRS 95.852(2). The present action was brought by retired members and their survivors who remained with the Ashland Fund.

This class action affecting seventy-four (74) plan beneficiaries was filed on September 25, 1991, as a "Petition for Declaration of Rights" against the City. The retiree petitioners alleged that the City failed to make a required annual contribution to the Fund to fund an annual cost of living adjustment (COLA) pursuant to KRS 95.859(3) (a 1990 amendment to the 1956 legislation). They further alleged that they were entitled to COLAs from prior years during which the City failed to make the required annual contribution. In its response to their petition, the City admitted noncontribution; but claimed that pursuant to the relevant statutes, contributions to fund annual COLAs are discretionary, not mandatory.

On October 1, 1992, the City filed a "Counterpetition for Declaration of Rights," naming the Board of Trustees of the Fund (the Board) as a third-party defendant. The City based its counterpetition against the Board on the Board's recent approval of a COLA. At the July 28, 1992 Board meeting, with the Mayor absent and the Finance Director ab-

staining, the two retired members voted a 3.7% cost of living increase "to comply with KRS 95.859(3)." At the time of the COLA approval, the Fund had insufficient resources to pay a COLA in the absence of a contribution by the City. In its counterpetition, the City contended that the approved COLA was improper since the City had no obligation to contribute additional funding for the COLA and did not intend to do so voluntarily. The City further contended that since the Board's action was not authorized by KRS 95.859(3) or any other statute, it was an illegal act and, accordingly, should be set aside.

On February 24, 1993, the Boyd Circuit Court entered its "Findings of Fact, Conclusions of Law and Judgment" in this matter. The trial court found that the City is not required under KRS 95.859(3) or any other statute to fund an annual COLA; and that a COLA must be "supported on an actuarially sound basis *by the Fund*" pursuant to KRS 95.859(3)—independently of any contribution by the City. (emphasis added).

Only two issues are before us: (1) whether a contribution by the City to the Fund to fund an annual COLA where the Fund has insufficient resources to pay the COLA itself is discretionary (as the City contends) or mandatory (as petitioners contend); and (2) whether the July 28, 1992 action of the Board was statutorily authorized (as petitioners contend) or an illegal act (as the City contends).

■ This is a case of first impression. Interpretation of statutes is a matter of law, *White v. McAllister,* Ky., 443 S.W.2d 541, 542 (1969), and a proper judicial function, *Masonic Widows and Orphans Home and Infirmary v. City of Louisville,* 309 Ky. 532, 544, 217 S.W.2d 815, 822 (1949). Since the issues raised herein are disposed of as a matter of law based on pure statutory construction, the judgment of the Boyd Circuit Court is not entitled to any deference. However, our judgment concurs with the trial court's judgment, and it is affirmed.

■ The present controversy centers around the proper interpretation of KRS 95.-859(3), which provides that:

Within six (6) months after the performance of the actuarial study required by KRS 95.872(6), the rate of retirement annuity of each annuitant shall be increased annually by an amount determined by the study to reflect so much of the annual increase in the cost of living of the annuitant *as may be supported on an actuarially sound basis by the fund.* So long as the same is published, such studies shall rely on the "All Items Index" of the United States Department of Labor's Consumer Price Indexes, but no increase in the cost of living shall exceed five percent (5%) or the actual increase in the cost of living, whichever is lower. The increases shall be payable only after the member has been retired for a period of three (3) full years, and all increases granted on July 15, 1990, or thereafter shall be compounded. (emphasis added).

The trial court interpreted the underscored language to mean that a COLA may be granted only if it can be "supported" by the fund without any additional city contribution. Appellants, on the other hand, contend that the underscored language in no way limits their entitlement to a COLA since a COLA can *always* be "supported" inasmuch as the City has a continuing obligation to contribute to keep the Fund sound. In other words, if the Board decides to grant any COLA (so long as it does not "exceed five percent (5%) or the actual increase in the cost of living, whichever is lower"), the City must afterwards contribute the necessary funds to support it. We disagree with this construction of KRS 95.859(3) since "a Statute should be construed, if possible, so that no part of it is meaningless or ineffectual." *Brooks v. Meyers,* Ky., 279 S.W.2d 764, 766 (1955). "A cardinal principle of statutory construction is to save and not to destroy." *Folks v. Barren County,* Ky., 313 Ky. 515, 520, 232 S.W.2d 1010, 1014 (1950). "The natural and appropriate office of a proviso is to create a condition precedent; to except something from the enacting clause; to limit, restrict, or qualify the statute in whole or in part." (footnotes omitted). 73 Am.Jur.2d *Statutes* § 318, p. 467 (1974).

Appellants assert that "[p]ension statutes should be examined in their entirety for the

legislative intent and are to be given a liberal construction." *Maybury v. Coyne*, Ky., 312 S.W.2d 455, 457 (1958). Appellants direct our attention to KRS 95.868 and KRS 95.872(6) in support of their interpretation. Fortunately, we are not torn between two competing rules of statutory construction since we do not believe that KRS 95.868 or KRS 95.872(6) supports appellants' interpretation.

KRS 95.868 concerns funds with active members, which is not the case with the Ashland Fund. KRS 95.872(6) indicates that the Board may employ actuarial assistance to "determine rates of city contribution." KRS 95.872(6) specifically provides that "[t]he actuary ... shall recommend, if appropriate, cost of living increases as provided in KRS 95.859." The plain meaning of this statute is that the actuary shall recommend *to the Board* a COLA if appropriate. After such recommendation, KRS 95.859(3) dictates that the COLA "shall" be granted *by the Board.*

Appellants' position is tantamount to the assertion that the Legislature intended *automatic* entitlement to yearly COLAs since a COLA would *always* be "supported on an actuarially sound basis by the fund" pursuant to KRS 95.859(3). If this were the Legislature's intent, we believe that it would have made this plain. The drafters of KRS 95.859 obviously were capable of using unambiguous language to indicate an automatic increase. KRS 95.859(2) provides in part as follows: "When social security benefits are increased, the surviving widows' minimum *shall be in-creased* by a like percentage, but the pension increase shall not exceed five percent (5%)." (emphasis added). Appellants are unable to explain why the "supported on an actuarially sound basis by the fund" proviso was included in KRS 95.859(3) but not KRS 95.859(2).[1]

KRS 65.156(3) addresses contributions by cities to funds such as the present one. It states that:

> Any city or municipal agency with a retirement system created pursuant to KRS ... 95.851 to 95.884, ... which is closed to new members pursuant to KRS ... 95.852 shall, if its local pension system provides a defined benefit, contribute annually to the pension system, for the benefit of the retirees of the system ... so much of the principal amount of any unfunded prior service liability as the actuary states is necessary to maintain cash flow adequate to pay retiree and beneficiary payments until financial obligations to all retirees and beneficiaries are fully satisfied.[2]

Under KRS 65.156(3), the City's sole obligation is to pay annually "so much of the principal amount of any unfunded prior service liability as the actuary states is necessary to maintain cash flow adequate to pay retiree and beneficiary payments until financial obligations to all retirees and beneficiaries are fully satisfied." The City has done this.

We affirm the Boyd Circuit Court's interpretation of KRS 95.859(3) that the funding of a pension COLA by the City is discretionary; and affirm the trial court's setting aside

---

1. The Board of the Fund of the City of Paducah asserts in its amicus curiae brief that the City of Ashland's position is tantamount to the assertion that the legislature intended *no* entitlement to yearly COLAs since:

> According to the Circuit Court, a COLA can only be granted when a surplus exists in the retirement fund. However, if previous actuaries had made perfect calculations as to prior rates of city contribution, and if actual experience was in alignment with the forecasted experience, there would *never* be a surplus in the fund and there would *never* be a COLA. This result could not have been intended by the legislature.

The City of Paducah in its amicus curiae brief to the contrary states:

> [F]actors such as increase of salaries to active members who contribute to the fund and increases to [sic] yield on the fund's investments over projected yields could very well create a surplus. In fact, the Paducah Pension Fund has on occasion historically experienced surpluses from which COLAs could be funded. A city contributing to its pension fund can always voluntarily increase its contributions so as to fund a COLA. As noted in the record, though the Ashland Pension Fund has always been underfunded, the Ashland Pension annuitants had nevertheless historically received two COLAs.

2. We have deleted the references in KRS 65.156(3) to "active participants who choose to remain in the system" and "members who have completed at least twenty (20) years' service and withdrawn from service pursuant to KRS 95.857" because the City of Ashland has none.

of the COLA approved by the Board as being statutorily unauthorized and illegal.

All concur.