74 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lois THOMPSON; Joyce Morton; and Nita McCombs, Plaintiffs-Appellants,
v.
MOUNTAIN CRANE MINERALS, INC; Clyde Gabbard, individually
doing business as Mountain Crane Minerals, Inc.; Rena
Gabbard, individually doing business as Mountain Crane
Minerals, Inc.; Shelby D. Rose, M.D., as Curator of the
Estate of Vivian W. Rose; and Vivian W. Rose, an
incompetent, individually, Defendants-Appellees.
 No. 94-5283.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1996.
 
 Before: NELSON and RYAN, Circuit Judges; and McKAY, Circuit Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The plaintiffs, Lois Thompson, Joyce Morton, and Nita McCombs, appeal from the district court's grant of summary judgment for the defendants in this diversity action alleging breach of contract and breach of fiduciary duty claims. The plaintiffs contend that the district court erred in holding that the Federal Energy Regulatory Commission did not "fix" prices for gas from the natural gas wells in which the plaintiffs have an interest, and in holding that no fiduciary relationship existed between the parties. We will affirm.
 
 I.
 
 2
 The plaintiffs are the daughters and heirs of Dr. J.C. Coldiron, a Kentucky physician. The lawsuit arises out of two contracts entered into by Dr. Coldiron for the sale of natural gas from two gas wells in Kentucky.
 
 
 3
 On November 21, 1968, Dr. Coldiron, along with five other individuals, entered into a contract with defendant Clyde Gabbard, under which Gabbard would purchase the gas produced from a natural gas well known as Dennie Campbell Well # 1. Through a series of transfers of interests, the operating interest came to be owned jointly by the plaintiffs, as heirs to Dr. Coldiron, and defendants Vivian Rose and Rena Gabbard. The day after the contract was signed, Clyde Gabbard assigned his rights to Mountain Crane Minerals, Inc., a Kentucky corporation of which defendants Vivian Rose, Clyde Gabbard, and Rena Gabbard are officers and owners of a beneficial interest.
 
 
 4
 On November 22, 1968, Dr. Coldiron and Clyde Gabbard entered into a second contract. This time, Dr. Coldiron and Clyde Gabbard were the owners of the operating interest in the Chester Campbell Well # 1, and they contracted with Mountain Crane to sell to Mountain Crane all the natural gas Chester Campbell Well # 1 produced.
 
 
 5
 Both contracts contained substantially identical terms. In pertinent part, the buyer agreed to pay for the gas at the rate of sixteen cents per thousand cubic feet, or MCF. However, the contracts also provided that
 
 
 6
 [a]nything herein contained to the contrary notwithstanding, it is specifically understood and agreed between the parties hereto that in the event the price provided for herein is or becomes subject to the jurisdiction of the Federal Power Commission, the price so fixed by the Federal Power Commission, or any such governmental authority, shall be the price to be charged hereunder from and after the date as of which the price is so fixed.
 
 
 7
 (Emphasis added.)
 
 
 8
 Before these two contracts were executed, Mountain Crane had agreed with Kentucky Gas Transmission Corporation, a predecessor to Columbia Gas Transmission Corporation, to sell the natural gas from the two Campbell wells at a rate of twenty-eight cents per MCF. This contract contains a clause identical to that set forth above. In 1972 and again in 1976, Kentucky Gas voluntarily increased the price it paid to Mountain Crane under this contract, in an effort to encourage the development of natural gas from the property.
 
 
 9
 Subsequently, in 1978, Congress passed the Natural Gas Policy Act of 1978, 15 U.S.C. Secs. 3301 et seq., establishing the Federal Energy Regulatory Commission as the successor to the Federal Power Commission. Under its authority, a new maximum lawful price for stripper well natural gas was established. The statute did not, however, "fix" a minimum price.
 
 
 10
 Following passage of the Act, Columbia Gas, in 1979, having by then succeeded Kentucky Gas, voluntarily increased its payments to Mountain Crane, just as Kentucky Gas had done in 1972 and 1976. Mountain Crane did not, however, increase its payments to Dr. Coldiron. Still later, in the summer of 1991, Columbia Gas filed for bankruptcy under Chapter 11, and Mountain Crane entered into a new contract with CMS Gas Marketing, selling the natural gas at a rate of approximately $2.00 per MCF. Again, Mountain Crane did not alter the price it paid to purchase the gas.
 
 
 11
 On September 16, 1992, the plaintiffs filed this action, contending, in essence, that the defendants breached the contract and "fiduciary duties" owed to the plaintiffs by receiving more from the ultimate purchaser, Kentucky Gas, Columbia Gas, or CMS Gas, than the plaintiffs received from the defendants. They contended that by setting price ceilings, the Federal Energy Regulatory Commission "fixed" prices within the meaning of the contract, and that the defendants were obliged to pay the plaintiffs the ceiling price.
 
 
 12
 On cross-motions for summary judgment, the district court rejected this argument, holding that the contracts unambiguously refer to "fixed prices," and concluding that ceiling prices did not constitute fixed prices. The court also rejected the plaintiffs' fiduciary duty argument, concluding that there simply was no fiduciary relationship involved in the parties' arms'-length business transaction. The plaintiffs then appealed the summary judgment for defendants.
 
 II.
 
 13
 We review the district court's grant of summary judgment de novo, employing the same test used by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). We consider the evidence in the light most favorable to the nonmoving party, and determine whether all the evidence before the district court " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). These rules of review apply where, as here, the parties have filed cross-motions for summary judgment. Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991).
 
 
 14
 Because subject matter jurisdiction in this case arises out of diversity of citizenship, 28 U.S.C. Sec. 1332, the district court must apply the law of the state in which it sits, in this case Kentucky. Davis v. Sears, Roebuck and Co., 873 F.2d 888, 892 (6th Cir.1989); see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This rule applies here, even though a federal statute is tangentially implicated. See Pennzoil Co. v. FERC, 645 F.2d 360, 487 (5th Cir.1981), cert. denied, 454 U.S. 1142 (1982). This court reviews de novo the district court's determination of what Kentucky's substantive law is. Salve Regina College v. Russell, 499 U.S. 225 (1991).
 
 A.
 
 15
 On appeal, the plaintiffs raise an argument that they failed to present to the district court, contending that the defendants are equitably estopped from asserting what the plaintiffs contend are inconsistent interpretations of the same contract provision. They contend that it would be "patently unfair" to allow the defendants to obtain high prices in their contract with Columbia Gas, yet pay out low prices in their contracts with the plaintiffs, when the pertinent contractual language is identical.
 
 
 16
 There are three insurmountable difficulties with this argument. First, the plaintiffs have presented no compelling reason for us to consider their argument in the face of their waiver of the issue in the district court; indeed, they neglect even to acknowledge the waiver problem. In the absence of such a reason, we adhere to the general rule that an issue not raised before the district court is not properly before us. Foster v. Barilow, 6 F.3d 405, 409 (6th Cir.1993). Second, even were we to consider this argument on its merits, the plaintiffs cannot show that the defendants assumed a position inconsistent with their being paid a certain price in their contract with Columbia Gas, since it is simply not inconsistent to charge one price to buyers, and pay another price to sellers, under two separate contracts between different parties, despite the similarity in contractual language. Likewise, the plaintiffs do not suggest and cannot show that they acted in reliance on the conduct or representations of the defendants toward Columbia Gas. Both reliance and inconsistency of positions are essential elements of an equitable estoppel argument, Laughead v. Commonwealth, 657 S.W.2d 228, 230 (Ky.1983) (quoting 31 C.J.S., Estoppel Sec. 108, pp. 548-549), and both are entirely absent here.
 
 B.
 
 17
 In addition to the equitable estoppel argument, the plaintiffs also contend that the contract language in question is ambiguous, and that a fiduciary relationship existed between them and Dr. Coldiron. The reasons necessitating rejection of these arguments were carefully and correctly developed by the district judge, the Honorable Jennifer Coffman, and we cannot improve upon her thoughtful and well-written opinion. We therefore adopt the district court's opinion as our own with respect to the remaining issues raised by the plaintiffs.
 
 III.
 
 18
 For these reasons, we AFFIRM.
 
 
 
 *
 The Honorable Monroe G. McKay, United States Senior Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation