John W. IRELAND, Appellant,

v.

Blake Allen DAVIS, Appellee.

No. 96–CA–0367–DG.

Court of Appeals of Kentucky.

Dec. 12, 1997.

Ernesto Scorsone, Michelle M. Ciccarelli, Susan C. Sears, Lexington, for Appellant.

No Brief for Appellee.

Before BUCKINGHAM, HUDDLESTON and JOHNSON, JJ.

*OPINION*

BUCKINGHAM, Judge.

John Ireland (Ireland) appeals from an order of the Fayette Circuit Court affirming an order of the Fayette District Court which dismissed a domestic violence order (DVO) that had been entered against Blake Allen Davis (Davis). For the reasons set forth hereinafter, we reverse and remand.

Ireland and Davis are homosexual males who were living together in an intimate relationship. Difficulties in the relationship arose which prompted Ireland to file a domestic violence petition in the Fayette District Court alleging that he had been abused by Davis. Following a hearing, a DVO was entered which ordered Davis to refrain from having any contact with Ireland. Several months later, Ireland filed an affidavit alleging that Davis had violated the terms of the DVO. Pursuant to the affidavit, a show cause warrant for Davis was signed by a Fayette District Court judge. Another district judge, however, set aside the arrest warrant and dismissed the entire domestic violence proceeding on the stated grounds that he lacked jurisdiction under the domestic violence statutes (KRS 403.715 -.785) because Ireland and Davis are of the same gender.

Ireland appealed the order dismissing the proceedings, but the Fayette Circuit Court entered an order affirming the dismissal order of the Fayette District Court. The matter is now before this court on discretionary review.[1]

KRS 403.725(1) states in part that "[a]ny family member or member of an unmarried couple who is a resident of this state or has fled to this state to escape domestic violence and abuse may file a verified petition in the District Court of the county in which he resides." KRS 403.725(3) states that "[a] petition filed pursuant to subsection (1) of this section may be filed by the family member or member of an unmarried couple seeking relief or by an adult family member or member of an unmarried couple on behalf of a minor family member." Since Ireland and Davis are not family members as that term is defined under KRS 403.720(2),[2] then they must meet the definition of "members of an unmarried couple" in order to fall within the protection of KRS 403.725. KRS 403.720(3) states that " '[m]ember of an unmarried couple' means each member of an unmarried couple which allegedly has a child in common, any children of that couple, *or a member of an unmarried couple who are living together or have formerly lived together.*" (Emphasis added.)

The Fayette Circuit Court determined that the definition of "member of an unmarried couple" was ambiguous in that it defined the term using the same term. Citing *City of Owensboro v. Noffsinger*, Ky., 280 S.W.2d 517 (1955),[3] it then looked to the prior version of the domestic violence statutes (which required an unmarried couple to have a child

**1.** The Fayette Circuit Court noted in its opinion that the courts of the Commonwealth are in need of guidance from the appellate courts or from the legislature on the issue involved in this appeal.

**2.** That statute defines a family member as "a spouse, including a former spouse, a parent, a child, a stepchild, or any other person related by consanguinity or affinity within the second degree[.]"

**3.** *The Court of Appeals held in this case that when "construing a statute which is ambiguous, or when the meaning is not clear, a court may look to a prior act from which it was taken...." Noffsinger, supra,* at 519.

in common in order to be afforded domestic violence protection) and determined that since same-sex couples cannot have a child in common, the new statute did not extend protection to such couples.

When the domestic violence statutes were amended in 1992, the General Assembly extended protection from domestic violence to a new class of individuals—those members of an unmarried couple who either are living together or have lived together but who do not have a child in common. The language of the statute is unambiguous, even though it is gender-neutral and does not specifically include or specifically exclude same-sex couples from its scope.

It would be illogical to apply the *Noffsinger* case and interpret the newly enacted portion of the statute by relying on the prior version which did not contain the provision in question. It would be even more illogical to do so when such an interpretation leads to the conclusion that the General Assembly did not intend to change the effect of the statute, despite enacting extensive revisions to it. The ruling of the Fayette Circuit Court, carried to its logical conclusion, would deprive unmarried heterosexual couples of the protection of the domestic violence statutes if the couple did not have a child in common. Such a result would be clearly contrary to the statute's purpose [4] and would render the amended portion of the statute completely ineffective.

The Fayette Circuit Court also held that since the domestic violence statutes are found in KRS Chapter 403 which is entitled "Dissolution of Marriage—Child Custody," then the statute may not extend protection to same-sex couples since they cannot be married and cannot have a child in common. This line of reasoning is flawed, however, since the domestic violence statutes afford protection not only to persons who are married but also to the others listed in the statutes, including unmarried couples.

The Fayette Circuit Court also reasoned that if domestic violence protection is afforded to more than married couples and couples with a child in common, then such protection would have to be afforded to roommates. Although the word "couple" is not defined in the statutes, we believe that it refers to two people engaged in an intimate relationship and would not include roommates. The reasoning of the Fayette Circuit Court that courts would be required to make inquiries into the intimate relationships of all roommates to determine whether they may be afforded protection by the domestic violence statutes is true. However, such an inquiry is already necessary for members of couples of the opposite sex who are roommates and who seek domestic violence protection.

The Fayette Circuit Court also states that same-sex couples have other avenues, such as the criminal complaint and arrest in a criminal proceeding and a restraining order in a civil proceeding, by which to seek protection from domestic violence. This begs the question and also overlooks the fact that to exclude same-sex couples on this basis would be to deny them the same protection that other couples are afforded.[5]

In short, we hold that the domestic violence statutes (KRS 403.715—.785) afford protection to same-sex couples just as they do to the others enumerated therein. The General Assembly has not given preferential treatment to same-sex couples or homosexuals; rather, it has provided for equal treatment under the law for same-sex or homosexual victims of domestic violence.

The orders of the Fayette Circuit Court and the Fayette District Court are reversed, and the case is remanded to the Fayette District Court for the reinstatement of the domestic violence proceedings that were dismissed.

---

4. One of the purposes of the domestic violence statutes is "[t]o allow persons who are victims of domestic violence and abuse to obtain effective, short-term protection against further violence and abuse in order that their lives will be as secure and as uninterrupted as possible[.]" KRS 403.715(1).

5. We will not address the equal protection of the law constitutional argument since we can decide the case on a basis other than constitutional grounds. *See* 5 Am.Jur.2d *Appellate Review* § 703 (1995).

HUDDLESTON, J., concurs.

JOHNSON, J., dissents and files a separate opinion.

JOHNSON, Judge, dissenting.

I respectfully dissent. After applying the rules of statutory construction, I conclude that it was the intention of the Legislature for "couple" as referenced in KRS 403.720 to include only members of the opposite sex.

"Interpretation of statutes is a matter of law, *White v. McAllister,* Ky., 443 S.W.2d 541, 542 (1969), and a proper judicial function, *Masonic Widows and Orphans Home and Infirmary v. City of Louisville,* 309 Ky. 532, 544, 217 S.W.2d 815, 822 (1949)." *Keeton v. City of Ashland,* Ky.App., 883 S.W.2d 894, 896 (1994). "We have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. *Department of Revenue v. Greyhound Corp.,* Ky., 321 S.W.2d 60 (1959)." *Bailey v. Reeves,* Ky., 662 S.W.2d 832, 834 (1984). "As with any case involving statutory interpretation, our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used. *Gateway Construction Co. v. Wallbaum,* Ky., 356 S.W.2d 247 (1962)." *Beckham v. Board of Education of Jefferson County,* Ky., 873 S.W.2d 575, 577 (1994). " '[A] Statute should be construed, if possible, so that no part of it is meaningless or ineffectual.' " *Keeton, supra* at 896, quoting *Brooks v. Meyers,* Ky., 279 S.W.2d 764, 766 (1955).

The crux of this case is determining what the Legislature meant by the term "couple." In addressing this question, the Majority Opinion states as follows: "Although the word 'couple' is not defined in the statutes, we believe that it refers to two people engaged in an intimate relationship and would not include roommates." The Majority fails to state any support for this belief. In fact, "couple" is defined in Webster's II, New Riverside University Dictionary (1988), in the context of human relationships, in part as follows: (1) "A man and woman united, as by marriage or betrothal"; and (2) "Two people

together." Neither of these two definitions supports the Majority's conclusion that "couple" "refers to two people engaged in an intimate relationship and would not include roommates."

In determining the Legislature's intent in using the word "couple," I find its placement of the domestic violence and abuse statutes in Chapter 403 of the Kentucky Revised Statutes, which also addresses dissolution of marriage and child custody, to be significant. While the Kentucky statutes relating to marriage do not include a definition of that term, it is established that in Kentucky that marriage is a legal union between members of the opposite sex. *See Jones v. Hallahan,* Ky., 501 S.W.2d 588 (1973) (Court held that there is no constitutional sanction or protection of right of marriage between persons of the same sex.) Chapter 403 also makes references to "husband and wife" and "minor children who are the issue of the marriage." And, the purposes of Chapter 403 as set forth in KRS 403.110 are as follows:

This chapter shall be liberally construed and applied to promote its underlying purposes, which are to:

(1) Strengthen and preserve the integrity of marriage and safeguard family relationships;

(2) Promote the amicable settlement of disputes that have arisen between parties to a marriage;

(3) Mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage;

(4) Make reasonable provision for spouse and minor children during and after litigation; and

(5) Make the law of legal dissolution of marriage effective for dealing with the realities of matrimonial experience by making irretrievable breakdown of the marriage relationship the sole basis of its dissolution.

All of these purposes relate to marriage, family relationships, spouses and/or children, and thus, involve either a legal union of

heterosexuals and/or procreation.[1] Consequently, I believe the overall tenor of Chapter 403 requires that KRS 403.720 be read to include only heterosexual couples.

Further, history reveals that the Legislature has refused to recognize sexual orientation as a protected class. KRS Chapter 344 *Civil Rights.* Thus, for the Legislature to include same-sex relationships under the domestic violence statutes would be a significant departure from past legislative enactments.

Ireland argues that my interpretation of the statute constitutes a violation of §§ 2 and 3 of the Kentucky Constitution and the Fourteenth Amendment to the United States Constitution. However, since the Legislature clearly has a reasonable basis for enacting legislation to promote, strengthen and preserve the institution of marriage and marital procreation, the statutes pass constitutional muster. *Cf. Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1986). While the statute includes heterosexual relationships other than marriages, the state nonetheless has a substantial governmental interest in strengthening relationships that could result in marriage and/or marital procreation. This is not to say, should it desire to do so, that the Legislature could not also extend the domestic violence protections to members of same-sex relationships. The promotion of the amicable settlement of disputes and the mitigation of potential harm to individuals certainly constitute reasonable grounds upon which the Legislature could choose to extend domestic violence protection to same-sex relationships. However, these same reasonable grounds can be said to apply to all persons who share a common residence whether or not they have an intimate or family relationship.[2]

Our function as a court is to ascertain and give effect to the intent of the Legislature, not to discover meaning not reasonably ascertainable from the statute. *Wallbaum, supra.* I am convinced that if the Legislature had intended to produce the result mandated by the Majority Opinion that it would have so stated by using language that is clear and understandable to all. If it is the desire of the Legislature to deviate from past public policy, it is within its power to do so and not for the courts to create what is not otherwise expressed.

1. I realize that there are children that live in homosexual households where one of the two parents is a biological parent and the other parent has adopted the child, but this does not eliminate the procreation requirement of a man and a woman biological parent. *Homosexuals as a New Class of Domestic Violence Subjects Under the New Jersey Prevention of Domestic Violence Act of 1991,* 31 U of Louisville J. of Fam. L. 557, 560 (1993).

2. The Majority Opinion states that its interpretation of the statute "has not given preferential treatment to same-sex couples or homosexuals; rather, it has provided for equal treatment under the law for same-sex or homosexual victims of domestic violence." But, there is a glaring inconsistency in this interpretation since it only protects a member of an intimate couple. A member of an intimate relationship involving more than two persons, regardless of the sexual orientation of the members, would not receive protection under the Majority's interpretation of the statute. It would appear to me that to deny a member of such an intimate relationship the same protection as a member of a same-sex couple would also constitute unequal treatment.