AMERICAN LIFE AND ACCIDENT
INSURANCE COMPANY,
Appellant,

v.

DEPARTMENT OF INSURANCE,
Commonwealth of Kentucky,
Appellee.

No. 97–CA–1660–MR.

Court of Appeals of Kentucky.

Aug. 7, 1998.

Rehearing Denied Jan. 29, 1999.

Discretionary Review Denied
by Supreme Court Oct. 13, 1999.

Eric L. Ison, John R. Cummins, Phillip E. Allen, Henry Meigs, II, Louisville, for Appellant.

Shaun T. Orme, Russell R. Coy, II, Frankfort, for Appellee.

Before ABRAMSON, BUCKINGHAM, and COMBS, JJ.

## OPINION

BUCKINGHAM, Judge.

American Life and Accident Insurance Company (American Life) appeals from an order of the Franklin Circuit Court affirming an order of the Department of Insurance, Commonwealth of Kentucky (Department). For the reasons set forth hereinafter, we affirm.

Insurance practices within this Commonwealth are regulated by Kentucky Revised Statute (KRS) Chapter 304 (the Kentucky Insurance Code). American Life, a stock life insurance corporation, is an "insurer" which is subject to the regulation of the Department under the Code. See KRS 304.1–040.[1]

Pursuant to KRS 304.2–210(1), the Department is required to examine each insurer to determine its financial condition, its ability to fulfill its obligations, the manner in which it fulfills its obligations, the nature of its operations, and its compliance with law. In late 1994 and early 1995, the Department examined American Life's records pursuant to the statute. The report filed by the Department's examiners ultimately led to a final order being entered by the acting commissioner of the Department which determined that American Life was in violation of statutory provisions concerning the percentage of its assets held in common stock. The Department's order was affirmed by the Franklin Circuit Court, and this appeal followed.

This case involves the interpretation of statutes in the Kentucky Insurance Code. Thus, it must be handled as a matter of law. *Keeton v. City of Ashland*, Ky.App.,

---

1. KRS 304.1–040 provides: " 'Insurer' includes every person engaged as principal and as indemnitor, surety, or contractor in the business of entering into contracts of insurance."

883 S.W.2d 894, 896 (1994). Furthermore, as the issues herein involve only matters of law, the order of the Franklin Circuit Court is not entitled to any deference. *Id.*

The version of KRS 304.7–020 which was in effect during the time period examined by the Department states as follows:

**Eligible investments.**—(1) Insurers shall hereafter invest in or lend their funds on the security of, and shall hold as invested assets, only eligible investments as prescribed in this subtitle.

(2) Any particular investment held by an insurer on July 14, 1992, which was a legal investment at the time it was made, and which the insurer was legally entitled to possess immediately prior to July 14, 1992, shall be deemed to be an eligible investment.

(3) Except as stated in subsection (2) of this section and KRS 304.7–030(4), eligibility of an investment shall be determined as of the date of the making or acquisition, but an investment permitted under KRS 304.7–270 shall be considered an eligible investment under another section or sections of this subtitle from and after the date on which it meets the requirements of eligibility of the section or sections as if it were made or acquired on that date.

(4) Any investment limitation or diversification requirement based upon the amount of the insurer's assets or a particular fund shall relate to the assets or fund as shown by the insurer's annual statement as of the December 31 next preceding date of acquisition of the investment by the insurer, or as shown by a current applicable financial statement, resulting from merger with another insurer, bulk reinsurance, or change in capitalization.

KRS 304.7–110(2) states that "[a] life insurer may not invest or have invested under this section at any one time more than twenty percent (20%) of its assets." KRS 304.7–270(1) provides in relevant part that "[a]n insurer may invest and have invested ... in investments or excessive investments ... not qualifying or not permitted under this subtitle in aggregate amount not over the lesser of: (a) Ten percent (10%) of its assets...." Reference has been made to this statute as the "basket clause."

The Department determined that the common stock investments of American Life exceeded the twenty percent limitation of KRS 304.7–110(2) and the additional ten percent limitation of KRS 304.7–270(1)(a) by approximately $33 million. The effect of the Department's order was to "nonadmit"[2] that amount of American Life's common stock investments, meaning that American Life could not issue policies based upon those investments.

■ American Life argues that the Department and the Franklin Circuit Court misinterpreted the statutes and that its common stock investments do not exceed the statutory limits. It contends that in determining whether the statutory limits were exceeded, the Department was required to look to the date of a new investment acquisition and then compare the total value of its common stock investments as of the date each was acquired to the value of its asset base as of the December 31 date next preceding the date of the new acquisition pursuant to KRS 304.7–020(3) & (4). It further argues that KRS 304.7–020(2) is a "grandfather clause" which made all "eligible investments" admissible regardless of the statutory limits. We disagree.

**2.** The significance of whether an asset is "admitted" is explained in KRS 304.6–010(2), which provides:

Admitted assets may be allowed as deductions from corresponding liabilities, and liabilities may be charged as deductions from assets, and deductions from assets may be

charged as liabilities, in accordance with the form of annual statement applicable to such insurer as prescribed by the commissioner, or otherwise in his discretion. The commissioner may make official regulations prescribing the application of the provisions of this section.

■ We agree with the Department that American Life "has confused eligibility with allowable amount." KRS 304.7–020 merely states that insurers are required to invest in only "eligible investments" and defines an "eligible investment" as an investment held by the insurer on a certain date "which was a legal investment at the time it was made, and which the insurer was legally entitled to possess immediately prior to [that date]." Whether an investment is an "eligible investment" which may be held by an insurer is a separate matter from the amount of common stocks in which an insurer may invest pursuant to KRS 304.7–110(2). KRS 304.7–020(2) is a "grandfather clause" only to the extent that it determines types of "eligible investments" that may be made by an insurer.

American Life further asserts that KRS 304.7–020(3), which states generally that "eligibility of an investment shall be determined as of the date of the making or acquisition," should be interpreted to mean that the admissibility of a particular stock investment should be determined on that date and not at some "arbitrary" later date. Again, American Life would incorrectly have us determine that an "eligible investment" is always fully admissible, even if its appreciation has caused the limits to be exceeded.

American Life also contends that the Department and the Franklin Circuit Court have misinterpreted or misconstrued the language of KRS 304.7–110(2) which states that "[a] life insurer may not invest or have invested under this section *at any one time* more than twenty percent (20%) of its assets." (Emphasis added.) Their argument is that the statute does not allow an insurer to make a common stock investment if "at any one time" when the insurer makes the stock investment, the statutory limits would be exceeded. We disagree with this interpretation and hold that the statute is clear in its meaning that an insurer may not have more than twenty percent of its assets invested in common stocks at any one time.

American Life next argues that the legislative intent and overall structure of the investment provisions of the Code compel the conclusion that American Life's successful common stock investments are fully admissible. It asserts that it is being penalized because its common stock investments have greatly appreciated in value and that the legislature surely did not intend that the appreciated portion of an insurer's common stock investments which exceed the statutory limits be nonadmitted. On the other hand, the Department argues that one of the stated purposes of the Code was to protect policyholders and others having an interest under insurance policies and that an insurer's over-concentration of assets in one investment could lead to financial instability if those assets suffer severe depreciation. We decline to join this debate between the parties and merely hold that the legislature clearly stated its intent in the statutes. *See Flying J Travel Plaza v. Commonwealth*, Ky., 928 S.W.2d 344, 347 (1996) (holding that the intention of the legislature in enacting a statute should be ascertained from the words of the statute and not from surmising what may have been intended).

■ American Life's final argument is that the Department should be estopped from changing its approach to the admissibility of common stock investments. Citing *Laughead v. Commonwealth*, Ky., 657 S.W.2d 228 (1983), American Life argues that the Department previously took the position that its common stock investments were admissible based on the ratio of the cost of these investments at the date of their acquisition to the total market value of its investments. American Life claims that the Department's change of policy causes it injury in the form of reduced surplus and substantial taxes if the appreciated stock investments must be sold.[3]

3. The Department's position is that American    Life is not required to sell any of its common

While it is the general rule that equitable estoppel applies to governmental agencies, it does so only in exceptional circumstances. *J. Branham Erecting & Steel Service Co. v. Kentucky Unemployment Ins. Comm'n*, Ky.App., 880 S.W.2d 896, 897 (1994). The *Branham* court distinguished the *Laughead* case, finding that there were special circumstances requiring the application of equitable estoppel in *Laughead* because the state agency's conduct had "lulled" the appellant into inaction. *Id.* at 898. We conclude that the facts in the case sub judice are more akin to those in the *Branham* case than those in the *Laughead* case. The circumstances herein are not "so exceptional" as to work a "gross inequity" between the parties. *City of Shelbyville v. Commonwealth,* Ky. App., 706 S.W.2d 426, 430 (1986).

The order of the Franklin Circuit Court is affirmed.

All concur.

stock investments but only that thirty-three million dollars of such investments are non- admitted.